58 F.3d 1361
 64 USLW 2048, 19 Employee Benefits Cas. 1532,
95 Daily Journal D.A.R. 8355,
Pens. Plan Guide P 23913G
 Donald J. FARR; Gregory H. Ishmiel; Rod W. Tracy; Willis
L. Rader; Joseph T. Dean; Robert Heuser; and
Jeanette P. Neufeld, Plaintiffs-Appellants,
v.
US WEST, INC., a Colorado corporation; The US West
Management Pension Plan; and US West
Communications, a Colorado corporation,
Defendants-Appellees.
 No. 93-35086.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 13, 1994.
Decided June 26, 1995.
 
 Leslie L. Wellman, Wellman & Murray, Portland, OR, for plaintiffs-appellants.
 D. Ward Kallstrom, Lillick & Charles, San Francisco, CA, for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: ALDISERT,* NORRIS, and THOMPSON, Circuit Judges.
 WILLIAM A. NORRIS, Circuit Judge:
 
 
 1
 Plaintiffs were long term employees of defendants US West, Inc. and US West Communications. In Jan. 1990, plaintiffs chose to retire under an amendment to the US West Management Pension Plan known as the "5 + 5 program" which created early retirement incentives for many long term employees. Under the 5 + 5 program, plaintiffs chose to receive their accrued pension benefits in a lump sum. Plaintiffs allege that US West did not tell them that those lump sum distributions in excess of the amount qualified to be rolled over into Individual Retirement Accounts ("IRAs") would be taxed.
 
 
 2
 On Dec. 15, 1989, J. Thomas Bouchard, Senior Vice President and Chief Human Resources Officer at US West, sent a letter to employees eligible to retire under the 5 + 5 program. Attached to the letter was a 15-page booklet providing an overview of the program. The booklet included a section entitled "Tax Considerations Affecting Choice of Distribution" which purported to "highlight[ ] the basic federal tax rules" relevant to the choice between taking the pension benefits in a lump sum or in a series of monthly installments. The booklet warned plan participants that the tax consequences of the available options were "very complex" and that employees "should consult with your tax advisor." For those who were not age 50 before 1986, the booklet provided the following information on lump sum distributions: "Distribution fully included in taxable income received except to the extent rolled over to another IRS-qualified plan or IRA within 60 days." For those who were age 50 before 1986, the booklet provided the following information on lump sum distributions: "All or part of [lump sum] distribution may be rolled over to another qualified plan or an IRA within 60 days without any current tax liability." The booklet did not say that only qualified portions of the lump sum distributions could be rolled over, and that everything else would be taxed.
 
 
 3
 The Dec. 18, 1989 issue of US West Today, a publication circulated to US West employees, contained an interview with Mr. Kamen, the Executive Director of Human Resources for US West, with the heading "Lump-Sum option clarified." In response to questions regarding the tax consequences of the lump sum option, Mr. Kamen stated, "Obviously, the lump-sum payment will provide you with a large amount of money that you can control and invest however you like. For some, the lump sum may also offer significant tax advantages."
 
 
 4
 On Jan. 17, 1990, several Pension Plan representatives and US West managers participated in a live telecast presentation concerning the 5 + 5 program broadcast to eligible employees. The telecast featured a panel of US West officers and upper management. Before the telecast aired, two of the panelists discussed the possibility of disclosing the potential tax problems with lump sums which could not be rolled over into IRAs, but decided to withhold this information. During the broadcast, Mr. Kamen mentioned that a "qualified portion of the lump-sum distribution" could be rolled over into an IRA, but did not explain what he meant by "qualified portion."
 
 
 5
 Each of the plaintiffs retired under the 5 + 5 program, elected to receive their accrued benefits in lump sums, attempted to roll over all of their lump sums into IRAs, but discovered that only qualified portions of those sums could be rolled over, and the rest was promptly taxed. On Feb. 6, 1990, after US West management realized that a significant number of people were in this predicament, it held a meeting to discuss possible responses. The plan actuary suggested reducing the discount rate from 8% to 5.25% on the excess portion of the lump sum to mitigate unfavorable tax consequences. The US West Employees' Benefits Committee adopted this proposal.
 
 
 6
 Plaintiffs subsequently submitted claims to the Plan for additional benefits to offset their unexpected tax liability. The Benefits Committee denied their claims.
 
 
 7
 Plaintiffs allege that US West breached its fiduciary duty to them under Sec. 404 of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. Sec. 1001 et seq. ("ERISA") by providing them with incomplete, false, and misleading information regarding the tax consequences of their lump sum distributions. Plaintiffs additionally sue US West under Oregon state law for, inter alia, fraud and negligent misrepresentation. Plaintiffs now seek either front and back pay from the dates they actually retired under the 5 + 5 program to the dates they would have retired had they not exercised that option, or a surcharge against US West equal to the taxes they had to pay on the portion of their benefits which could not be rolled over into IRAs.
 
 
 8
 The district court awarded US West summary judgment on both the ERISA and the state law claims. First, the district court held that, even if US West had breached a fiduciary duty to plaintiffs, plaintiffs would not be entitled to the relief they sought because ERISA does not provide for individual recovery for breaches of fiduciary duties. Farr v. U.S. West, Inc., 815 F.Supp. 1364, 1374-75 (D.Or.1992).[1] Second, it held that plaintiffs' state law fraud and negligent misrepresentation claims were preempted by ERISA. Farr v. US West, Inc., 815 F.Supp. 1360, 1363 (D.Or.1992).[2] We affirm in part and reverse in part.
 
 
 9
 * ERISA Claim
 
 
 10
 There are two fiduciary duty provisions in ERISA. The first provides that a fiduciary
 
 
 11
 who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate ...
 
 
 12
 29 U.S.C. Sec. 1109(a). It is settled law that Sec. 1109 only allows recovery that "inures to the benefit of the plan as a whole." Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140, 105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985). See also id. at 144, 105 S.Ct. at 3091 ("[T]he entire text of [Sec. 1109] persuades us that Congress did not intend that section to authorize any relief except for the plan itself."). Thus, a plan may get relief under Sec. 1109, but individual beneficiaries generally may not. Horan v. Kaiser Steel Retirement Plan, 947 F.2d 1412, 1418 (9th Cir.1991). As we have explained, "the fiduciary duty provisions in ERISA are primarily concerned with protecting the integrity of the plan, which in turn protects all beneficiaries, rather than remedying each wrong suffered by individual beneficiaries." Id. (citation omitted). See also Sokol v. Bernstein, 803 F.2d 532, 536 (9th Cir.1986) ("the statute focuses not on the direct protection of a beneficiary's interests, but on the protection of the integrity of the plan in which the beneficiary is enrolled"). Therefore, "[a]lthough individual beneficiaries may bring a breach of fiduciary duty claim against an ERISA plan administrator, they must do so for the benefit of the plan." Parker v. BankAmerica Corp., 50 F.3d 757, 768 (9th Cir.1995). See also Sokol, 803 F.2d at 536 ("ERISA grants no private right of action by a beneficiary qua beneficiary; rather, it accords beneficiaries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms.").
 
 
 13
 There is no dispute in this case that plaintiffs' claims for damages are individual and are not sought for the benefit of the plan as a whole. Plaintiffs assert, however, that they may recover individual damages under a separate fiduciary duty provision of ERISA, Sec. 1104. However, in a case brought under Sec. 1104, we rejected this argument, reiterating that "a fiduciary's duty under ERISA runs to the plan as a whole and not to the individual beneficiary." Williams v. Caterpillar, Inc., 944 F.2d 658, 665 (9th Cir.1991) (citations omitted). In sum, under Sec. 1104 as well as Sec. 1109, plaintiffs' recovery "is limited to relief protecting the integrity of the plan as a whole and does not extend to individual plan participants." Williams, 944 F.2d at 665 (citation omitted). Like the plaintiffs in Horan, "the plaintiffs [here] fail to present a fiduciary breach claim [because] the only remedy sought is for their own benefit, rather than for the benefit of the Plan as a whole." 947 F.2d at 1418.
 
 II
 State Law Claims
 
 14
 ERISA provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. Sec. 1144(a). This language is "conspicuous for its breadth." Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (citation omitted). As we have noted, "ERISA preemption is notoriously broad, but several recent cases have held that it has reasonable limits." Bogue v. Ampex Corp., 976 F.2d 1319, 1322 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993). Essentially, a plaintiffs' state law claim " 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900, 77 L.Ed.2d 490 (1983). See also District of Columbia v. Greater Washington Board of Trade, --- U.S. ----, ----, 113 S.Ct. 580, 583, 121 L.Ed.2d 513 (1992) (noting that preemption applies even if the state law is not specifically designed to affect such plans or its effect is only indirect). However, for a state law cause of action to be preempted, the relationship between it and the ERISA plan cannot be "too tenuous, remote or peripheral." Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.
 
 
 15
 In demarcating the ERISA preemption line, we have held that four types of state laws "relate to" ERISA plans and are therefore preempted: 1) laws that regulate the type of benefits or terms of ERISA plans, 2) laws that create reporting, disclosure, funding, or vesting requirements, 3) laws that provide rules for calculation of the amount of benefits to be paid under ERISA plans, and 4) laws that provide remedies for misconduct growing out of the administration of ERISA plans. Martori Bros. Distributors v. James-Massengale, 781 F.2d 1349, 1356-57 (9th Cir.), as amended, 791 F.2d 799 (9th Cir.), cert. denied, 479 U.S. 949 & 1018, 107 S.Ct. 435 & 670, 93 L.Ed.2d 385 & 722 (1986). See also Dytrt v. Mountain State Telephone and Telegraph Co., 921 F.2d 889, 897 (9th Cir.1990). The instant appeal, however, involves none of these categories of state laws. Plaintiffs do not sue US West under a state law that regulates the type of benefits or terms of the ERISA plan itself. Rather, plaintiffs allege fraud in US West's advice about the tax consequences of lump sum distributions. Their claim does not relate to the reporting, disclosure, funding, or vesting requirements of the plan itself; it concerns the unsolicited and allegedly misleading tax advice US West gave its employees. Plaintiffs do not challenge the amount of benefits paid to them under an ERISA plan; rather, plaintiffs got their full benefits due under the 5 + 5 program. Finally, plaintiffs do not allege misconduct growing out of US West's administration of the ERISA plan itself; rather, they challenge US West's misrepresentations regarding their tax liability independent of the plan.
 
 
 16
 The Eleventh Circuit recently examined an ERISA preemption question concerning fraud on the part of an employer. In Forbus v. Sears Roebuck & Co., 30 F.3d 1402 (11th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 906, 130 L.Ed.2d 788 (1995), a Sears general manager misrepresented to its employees that the facility where they worked was going to be closed and their jobs eliminated in order to induce them to retire under an early retirement benefits package. The Eleventh Circuit held that plaintiffs' state law fraud claim did not "relate to" an ERISA plan and thus was not preempted. Forbus, 30 F.3d at 1405-06. The court was careful to point out that plaintiffs' claim centered on the employer's fraud concerning the elimination of plaintiffs' jobs rather than fraud concerning an ERISA plan itself or any other benefits package. Id. at 1406. The Eleventh Circuit also held that the mere fact that plaintiffs' damages may be affected by a calculation of pension benefits was not sufficient to warrant preemption by ERISA. Id. at 1406-07. The court concluded: "ERISA preemption is not without boundaries. In the present case--in which ERISA applies only peripherally, if at all--it would defy common sense to allow ERISA to preempt a state law fraud claim." Id. at 1407.
 
 
 17
 The instant appeal is on all fours with Forbus. In this case, various US West representatives allegedly misrepresented tax consequences of lump sum distributions in order to induce plaintiffs to agree to resign under an early retirement benefits package, the 5 + 5 program. Plaintiffs do not claim fraud in the promised benefits, the scope of the plan, or the distribution of plan assets. Plaintiffs' claim centers on US West's alleged fraud concerning the tax consequences of lump sum distributions rather than fraud concerning the benefits plan itself. Moreover, the damages that plaintiffs may recover under the state law fraud claim will be determined with reference to the Internal Revenue Code, not the US West Pension Plan. In the present case--in which ERISA applies only peripherally, if at all--it would defy common sense to allow ERISA to preempt this straightforward state law fraud claim.
 
 
 18
 We have held that state law claims challenging fraudulent statements about the nature of a benefits plan itself are preempted by ERISA. See, e.g., Olson v. General Dynamics Corp., 960 F.2d 1418, 1422-23 (9th Cir.1991), cert. denied, 504 U.S. 986, 112 S.Ct. 2968, 119 L.Ed.2d 588 (1992) (claim challenging oral misrepresentation regarding the level of benefits provided by a plan is preempted); Davidian v. Southern California Meat Cutters Union, 859 F.2d 134, 135 (9th Cir.1988) (claim against incorrect description of the insurance benefits of an ERISA plan is preempted). Other circuits agree. Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1218 (5th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 68, 121 L.Ed.2d 35 (1992) (claim based upon an employer's misrepresentations regarding the terms of a plan itself is preempted); Consolidated Beef Industries, Inc. v. New York Life Ins. Co., 949 F.2d 960, 964 (8th Cir.1991), cert. denied, 503 U.S. 985, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992) (state law claims for misrepresentation in plan billings, interest rates, and annual statements are preempted); Degan v. Ford Motor Co., 869 F.2d 889, 894-95 (5th Cir.1989) (claim for breach of an oral agreement to pay early retirement benefits is preempted); Phillips v. Amoco Oil Co., 799 F.2d 1464, 1470 (11th Cir.1986), cert. denied, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987) (claim challenging failure to disclose the terms of a benefit plan is preempted). Our holding today is not at odds with these cases because each involved fraud in the description of the plan itself. By contrast, the actions of US West officials involved allegedly fraudulent tax advice regarding lump sum distributions, not misrepresentations about the plan itself or benefits due.
 
 
 19
 This analysis is buttressed by other case law. We have noted that a plaintiff's claim is generally not preempted if the employer had "any duty to her outside the proper administration of the benefit plan." Gibson v. Prudential Ins. Co. of America, 915 F.2d 414, 417 (9th Cir.1990). In Gibson, we found that the plaintiff could not allege the existence of such a duty because "[t]here would be no relationship or cause of action between the appellees and Gibson without the Plan." Id. Here, in contrast, there is an independent relationship between plaintiffs and US West upon which the state law claims rest, namely, the employer-employee relationship. Plaintiffs allegedly relied upon tax advice which came from their employer, not from a plan administrator. Defendants made many of the alleged misrepresentations regarding tax advice as US West officials, not as fiduciaries to or representatives of the plan. The signatory to the cover letter accompanying the booklet describing the 5 + 5 program, for instance, gave his title as "Senior Vice President and Chief Human Resources Officer" of US West, not as a pension plan representative. Employees naturally assumed that a company officer charged with employee management would provide them with accurate information. Additionally, the booklet containing the allegedly misleading tax information was published by US West, not the US West Management Pension Plan. Moreover, once US West undertook the responsibility of giving tax advice to its employees when it allegedly knew what it was advising was false, it ventured well beyond its fiduciary duty as a plan administrator.
 
 
 20
 In short, the instant case provides a set of facts and a state law cause of action with "too tenuous, remote, or peripheral" a relationship to an ERISA-governed plan for preemption. Shaw, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. A plaintiff may avoid preemption of a claim "to the extent that it relies on theories independent of the benefit plan." Sorosky v. Burroughs Corp., 826 F.2d 794, 800 (9th Cir.1987). The state law fraud theory upon which plaintiffs in this case proceed is that the tax advice US West gave them was misleading, incomplete, and fraudulent. They do not claim that US West misrepresented anything about the pension plan itself, and their theory is thus independent of that plan. We hold that plaintiffs' state law claims are not preempted.
 
 
 21
 We AFFIRM the district court's summary judgment in favor of US West on the ERISA claim because plaintiffs may not obtain individual relief under ERISA for violations of fiduciary duties. We REVERSE the district court's summary judgment in favor of US West on the state law claims because they are not preempted under ERISA. We REMAND the state law claims to the district court for further proceedings. See 28 U.S.C. Sec. 1367.
 
 
 
 *
 The Honorable Ruggero J. Aldisert, Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 The district court also held that, even if US West had a fiduciary duty to plaintiffs, it had not breached that duty in this case, and that lost tax benefits are extra-contractual damages which are not "other appropriate equitable relief" authorized under ERISA. Farr v. U.S. West, Inc., 815 F.Supp. 1364, 1373-76 (D.Or.1992). We do not reach these questions
 
 
 [2]
 The district court held that the 5 + 5 program did not constitute a separate, "excess benefit plan" exempted from ERISA preemption under 29 U.S.C. Sec. 1002(36). Farr v. US West, Inc., 815 F.Supp. 1360, 1363-64 (D.Or.1992). While we agree with the district court that the 5 + 5 program did not constitute a separate, "excess benefit plan" under Sec. 1002(36), we hold instead that defendants' actions challenged under state law were not preempted because they were not related to an ERISA plan