**Michael D. CAMP, et al., Plaintiffs,**

v.

**PACIFIC FINANCIAL GROUP, et al., Defendants.**

**Donna Jeanne MYERS, et al., Plaintiffs,**

v.

**Carlton J. HAGMAIER, et al., Defendants.**

**Michael D. CAMP, et al., Plaintiffs,**

v.

**Carlton J. HAGMAIER, et al., Defendants.**

**And Related Cross–Actions.**

**Nos. CV 96–1637 MRP, CV 96–2806 MRP and CV 96–3339 MRP.**

United States District Court, C.D. California.

Feb. 11, 1997.

Shawn Hanson, Adam E. Sak, James M. Duenow, Pillsbury Madison & Sutro L.L.P., San Francisco, CA, for Plaintiffs.

David L. Bacon, Dean A. Morehous, Jr., Christine Franklin, Thelen, Marrin, Johnson & Bridges L.L.P., San Francisco, CA, for The Guardian Life Insurance Company of America and Guardian Investor Services Corp.

Jana I. Lubert, Joseph Campo, Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, CA, for Carlton J. Hagmaier and Pacific Financial Group.

## OPINION AND ORDER

PFAELZER, District Judge.

### Background

The defendants have filed motions to dismiss three of the four claims in the Third Amended Complaint ("TAC") in *Michael D Camp, Sue E. Camp, and Dennis M. Camp, as trustees of the PIC Manufacturing Family Trust et al. v. Pacific Financial Group et al.*, CV 96–1637 MRP (the "PIC Action"). The PIC Action is one of three actions consolidated before this Court arising out of the conduct of defendants Carlton J. Hagmaier ("Hagmaier"), the Pacific Financial Group ("Pacific") and the Guardian Life Insurance Company of America ("Guardian").[1] The TAC in the PIC Action was filed after this Court dismissed with prejudice numerous

---

1. Two other actions are consolidated with the PIC Action: *Donna Jeane Myers et al. v. Carlton J. Hagmaier et al.*, CV 96–2806 MRP (the "Myers Action") and *Michael D. Camp et al. v. Carlton J. Hagmaier et al.*, CV 96–3339 MRP (the "Camp Action").

state law torts and dismissed with leave to amend a state law claim for "Wrongful Inducement to Enter Into an ERISA Plan" and a claim alleging violations of the Racketeer Influenced and Corrupt Organizations provisions of the Organized Crime Control Act of 1970. 29 U.S.C. §§ 1001–1461 ("ERISA"); 18 U.S.C. §§ 1961–1968 ("RICO"). The TAC alleges only four claims: (1) wrongful inducement to enter into an ERISA plan; (2) common law fraud; (3) breach of fiduciary duty under ERISA; and (4) RICO violations.

The PIC Manufacturing Family Trust doing business as PIC Manufacturing Company ("PIC") and the PIC Manufacturing Retirement Plan ("Plan"), an ERISA plan, seek monetary damages against defendants Hagmaier and Pacific (collectively the "Hagmaier defendants") and defendants Guardian and Guardian Investor Services Corporation ("GISC"). The plaintiffs' claims arise out of Hagmaier's misconduct in the sale and servicing of Guardian life insurance policies which were to be purchased and maintained as assets of the Plan and Guardian's alleged failure to supervise and oversee its agent Hagmaier. Hagmaier solicited the plaintiffs to establish the Plan, and, after its creation, Hagmaier became administrator of the Plan.

The plaintiffs have converted a case of mismanagement and self-dealing by an ERISA plan administrator into two relatively tortured state law claims. The first is for wrongful inducement to enter into an ERISA plan which is a theory now recognized in at least four circuits. The plaintiffs allege that Hagmaier and Guardian fraudulently portrayed Hagmaier as an experienced ERISA professional qualified to establish, advise and administer ERISA plans. The plaintiffs allege that Guardian knew Hagmaier was thoroughly unqualified to establish and administer an ERISA plan because Guardian provided only minimal training to its agents. Further, according to the TAC, the Guardian materials which advertised Hagmaier as an ERISA expert were part of a scheme to sell Guardian life insurance policies as ERISA plan assets. The plaintiffs allege that, but for the fraudulent representations of Hagmaier's qualifications and the Guardian's active participation in the management of the Plan through its subsidiary GISC, the plaintiffs would never have established the Plan.

Assuming the truth of all of these allegations, the plaintiffs' only injury occurred after the Plan was established and funded. The TAC does not allege any damages sustained by the plaintiffs at the inception of the Plan. Rather, the damages the plaintiffs seek to recover relate to alleged looting and mismanagement of Plan assets by Hagmaier through Pacific.

In the second claim under state law, three individual plaintiffs seek to recover against the defendants for offering fraudulent tax advice. This fraudulent tax advice claim is an attempt by the plaintiffs to bring this case within the scope of *Farr v. US West, Inc.*, 58 F.3d 1361 (9th Cir.1995) (Norris, J.) (finding no ERISA preemption of state law fraud claims by former employees and plan participants against former employer where employees alleged that employer gave fraudulent tax advice about treatment of lump sum benefit plan withdrawals inducing employees to take early retirement and incur substantial tax penalties). The defendants move to dismiss the first and second claims arguing that ERISA preempts these state law claims.

The ERISA claim, which is the third claim in the TAC, is not challenged in these motions. The fourth claim is for violations of RICO. The defendants move to dismiss the RICO claim arguing that the TAC fails to allege with particularity the elements of a RICO claim. The defendants also move to strike the jury demand and prayer for punitive damages arguing that ERISA does not provide for jury trials or the imposition of exemplary damages.

On January 28, 1997, the defendants' motions to dismiss and to strike came before the Court. David L. Bacon argued for the moving parties, and Shawn Hanson argued for the plaintiffs. After hearing the arguments of counsel, the Court took the matter under submission. Having fully considered the arguments presented and the pleadings and papers on file, the Court grants the defendants' motions to dismiss the first, second and fourth claims in the TAC and to strike

the demand for a jury trial and the prayer for punitive damages.

### Analysis

#### I. Does ERISA Preempt the Plaintiffs' First Claim for Relief?

Generally, ERISA preempts any state law to the extent the law "relate[s] to" a covered benefit plan. 29 U.S.C. § 1144(a). Early on in defining the scope of ERISA preemption, the key statutory phrase "relate to" was given its broad, common sense meaning such that a state law was held to relate to an ERISA plan if it "ha[d] a connection with or reference to such a plan." *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (citations omitted). In numerous opinions, the Supreme Court found that various state laws related to covered benefit plans and the Court reiterated the broad and sweeping nature of ERISA preemption. *See District of Columbia v. Greater Washington Bd. of Trade,* 506 U.S. 125, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (stating that ERISA preempts local law prohibiting employers from reducing health benefits to employees receiving workers' compensation); *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (finding that ERISA preempts state wrongful discharge claim by employee alleging that termination was designed to prevent him from receiving benefits under covered plan); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that ERISA preempts state tort and breach of contract claims by plan participant alleging improper processing of benefit claim); *Metropolitan Life,* 471 U.S. at 739, 105 S.Ct. at 2388–89 (stating that Massachusetts law requiring employers to provide mental health-care benefits for employees clearly relates to ERISA plans); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) (finding that two state laws mandating health and welfare benefits for certain employees relate to ERISA plans). In its most recent venture into the realm of ERISA preemption, the Supreme Court reversed the Second Circuit and held that ERISA does not preempt state laws which impose surcharges on hospital services to be paid by private insurance in the form of ERISA medical plans. *New York Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (hereinafter *New York Blues*).

The TAC alleges numerous instances of fraud by the defendants before the creation of the Plan. Most of this pre-Plan fraud relates to Guardian's deliberate decision to advertise Hagmaier as an ERISA expert even though Guardian managers knew agents like Hagmaier were not qualified to establish and advise ERISA plans. TAC ¶¶ 11–30. Guardian is charged with supplying Hagmaier and other agents with sales and promotional materials which instruct agents on how to emphasize their "expertise", how to conceal their ignorance, and how to portray Guardian and GISC as backers of the ERISA plans who provide technical and administrative support to the Plan as needed. Hagmaier is charged with making fraudulent oral and written representations about his expertise and qualifications to the PIC trustees.

The TAC alleges that, but for these misrepresentations, the Plan would never have been created by the plaintiffs. TAC ¶ 87. The Plan was created and the plaintiffs believed that Guardian life insurance products would constitute a significant portion of the Plan's assets. PIC made annual contributions to the Plan for several years before realizing that assets were missing from the Plan. In the first claim in the TAC, the plaintiffs seek to recover these missing assets under state law by contending that the defendants' fraudulent representations as to Hagmaier's ability to administer the Plan caused these damages. The defendants argue that this claim is preempted under ERISA because the claim relates to a covered plan and the claim provides an alternative mechanism for enforcing the obligations imposed by ERISA. *See, e.g., New York Blues,* 514 U.S. at ——, 115 S.Ct. at 1678.

■ The plaintiffs argue that ERISA does not preempt state law claims relating to misconduct occurring before the creation of an ERISA plan. As a general proposition, this Court agrees with the plaintiffs that insur-

ance professionals and insurance companies are not immune from state regulation of their sales and marketing practices merely because the insurance products were sold to, or for the benefit of, ERISA plans. The plaintiffs direct the Court to four circuit court decisions which hold that ERISA does not preempt state law claims alleging wrongful inducement to enter into an ERISA plan. A close examination of these appellate decisions is warranted because the first claim for relief targets the same misconduct that these decisions recognize as actionable under state law despite the preemptive force of ERISA.

In *Perry v. P*I*E Nationwide, Inc.*, 872 F.2d 157 (6th Cir.1989), *cert. denied*, 493 U.S. 1093, 110 S.Ct. 1166, 107 L.Ed.2d 1068 (1990), the court, with some misgivings, ruled that ERISA did not preempt state law fraud claims by employees alleging that their employer's misrepresentations about plan benefits induced them to join the plan *and sacrifice wages*. The defendant allowed each employee to participate in an employee stock ownership plan covered by ERISA only if the employee agreed to a 15% wage reduction. 872 F.2d at 158. The plaintiffs accepted the offer and joined the plan. The plaintiffs sought recision and a refund of wage reductions alleging that the employer made false representations about the company's future prospects to employees in order to induce plan participation and wage reductions. *Id.* at 158–59. After acknowledging that the arguments for and against preemption were almost in equipoise, the court gave "plaintiffs the benefit of some doubt" and ruled that there was no preemption because ERISA did not clearly provide an "adequate remedy to redress the wrongs claimed." [2] *Id.*

The outcome in *Perry* appears appropriate given the complaint before that court. The misconduct alleged in the complaint occurred before the plan was formed during a time when neither the plaintiffs nor the defendant were ERISA entities. The complaint seeks to recover wages surrendered by the plaintiffs in order to join the plan. There was no allegation that the ERISA plan was mismanaged or improperly administered. Stated differently, the proper administration of the plan and total compliance with the mandates of ERISA would not have altered or impacted the nature or cause of the damages sustained by the plaintiffs in *Perry*. Finally, if ERISA preempted the state law claim advanced in *Perry*, employers (and presumably all others) would be immune from civil liability for fraudulently misrepresenting the terms or conditions of an ERISA plan to potential plan participants before the creation of the plan. This Court doubts that Congress intended to grant this immunity when it enacted ERISA.

Following *Perry*, the Fifth Circuit held that ERISA does not preempt a claim against an insurance agent for misrepresenting the benefits of a proposed plan thereby inducing the plaintiff *to leave his current plan for the new ERISA plan*. *Perkins v. Time Ins. Co.*, 898 F.2d 470 (5th Cir.1990); *accord Hubbard v. Blue Cross*, 42 F.3d 942 (5th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 2276, 132 L.Ed.2d 280 (1995). *Perkins* is the archetype of this new claim for wrongful inducement to enter an ERISA plan. The plaintiff owned a small company and maintained employee health insurance in an ERISA plan. 898 F.2d at 472. An unscrupulous insurance agent approached the plaintiff offering to save the company thousands of dollars in health insurance costs if the company switched insurance plans. *Id.* The plaintiff insisted that any new plan provide the same coverage as the existing plan and even told the agent that his daughter had serious head and eye defects which would require surgery in the near future. *Id.* The insurance agent assured the plaintiff that his daughter's condition would be covered under the new plan after the plaintiff asked about exclusions for preexisting conditions. *Id.* The plaintiff switched ERISA plans and his daughter was *not* covered under the new plan because her defect was correctly classi-

---

**2.** Since *Perry*, the Supreme Court has indicated that ERISA permits some equitable remedies to redress claims brought by individual plaintiffs as plan participants. *Varity Corp. v. Howe*, —— U.S. —— , 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (holding that ERISA permits suits for individualized equitable relief).

fied as an excludable preexisting condition under the terms of the policy.

After the plaintiff sued both the agent and the new health insurer, the Fifth Circuit affirmed the dismissal of the insurer on a breach of contract claim but remanded to the district court so the plaintiff could amend the complaint to charge the agent with wrongful inducement. *Id.* at 474. "[W]e conclude that a claim that an insurance agent fraudulently *induced an insured to surrender coverage under an existing policy*, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly [and therefore is not preempted]." *Id.* at 473 (emphasis added).

The facts in *Perkins* warranted a state common law remedy for the alleged misconduct. The action related to misconduct which occurred before the creation of the plan and did not involve ERISA entities. The misconduct related solely to the misrepresentations of the terms and conditions of the proposed ERISA plan. The subsequent administration and management of the actual plan was completely irrelevant to the claim recognized by the Fifth Circuit.[3]

Once again, ERISA did not provide the plaintiff with any claim to redress the alleged wrongdoing because the agent was not a proper ERISA defendant. This policy factor should not be underestimated. It seems evident that if the agent in *Perkins* did what the plaintiff alleged, the agent should be liable to the plaintiff under the common law unless it was the "clear and manifest purpose of Congress" to preempt state regulation of this conduct. *See New York Blues*, 514 U.S. at ——, 115 S.Ct. at 1676 (citations omitted). States have been the traditional regulators of the insurance industry and most have enacted comprehensive regulatory schemes to govern the sale of insurance products. *See, e.g., Metropolitan Life*, 471 U.S. at 728–29, 105 S.Ct. at 2383–84. ERISA does not regulate

the sale of insurance products to covered plans, however. If claims like the one in *Perkins* are preempted, ERISA has the effect of allowing fraud by benefit plan marketers to go unchecked. This would be an odd result for legislation designed to protect the rights of employees and to encourage the creation of benefit plans.

Since *New York Blues*, the Eleventh Circuit, sitting en banc, overruled an earlier panel opinion and followed *Perry* and *Perkins* by recognizing a wrongful inducement claim. *Morstein v. National Ins. Serv., Inc.*, 93 F.3d 715 (11th Cir.1996) (en banc), *cert. denied*, —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). The Fourth Circuit has also recognized a state law claim for wrongful inducement to enter an ERISA plan. *Coyne & Delany Co. v. Selman*, 98 F.3d 1457 (4th Cir.1996).

Factually, *Morstein* is identical to *Perkins*. The plaintiff was the sole shareholder of a small company which provided medical insurance to its employees. 93 F.3d at 716–17. An insurance broker and agency offered to provide the plaintiff with a new policy. *Id.* According to the complaint, the plaintiff advised the broker that any replacement policy would be unacceptable if it excluded from coverage treatment related to preexisting medical conditions. *Id.* The defendant broker procured a plan and assured the plaintiff that the scope of coverage was the same under both the replacement and existing plans, so *the plaintiff dropped the company's existing policy in favor of the new policy. Id.* When the plaintiff had hip replacement surgery a year later, the insurer denied coverage because the surgery treated a preexisting condition. The policy excluded coverage for preexisting conditions of the type inflicting the plaintiff. *Id.* at 717. The plaintiff sued the broker-agent and the insurer. The Eleventh Circuit held that the plaintiff could proceed against the broker-agent on a wrongful inducement claim.[4]

---

3. Arguably, the state law claim in *Perkins* presupposes the proper administration of the plan. The agent's representations regarding the terms and conditions of the plan would not be fraudulent if the plan did in fact provide the advertised benefits when properly administered by the ERISA fiduciary.

4. Guardian attaches significant weight to the fact that the plaintiff was not permitted to proceed against the insurance company on her wrongful inducement claim. Initially, it should be noted that "Morstein's claims against [the plan underwriter] and [the administrator of the medical plan] are not at issue on appeal." *Morstein*, 93

In determining that ERISA did not preempt the wrongful inducement claim, the court focused on two points. First, Congress did not intend for ERISA to supplant state law torts relating to the marketing of insurance products thereby immunizing insurance agents from civil liability for fraud. *Morstein*, 93 F.3d at 722–24. Additionally, the defendants in *Morstein* were not ERISA entities. *Id.*

As in *Perkins* and *Perry*, the state law claim recognized in *Morstein* offers the only mechanism to redress the plaintiff's loss in that case which was wholly unrelated to the administration of the plan. The plan did not contain the terms and conditions represented by the agent because the plan properly denied a claim that the agent promised would be covered.

*Coyne & Delany* is somewhat different factually. The plaintiff was a small manufacturing company which provided medical insurance to each of its employees. 98 F.3d at 1460. Defendants Selman and BCS were in the business of designing and administering group health insurance plans. *Id.* The defendants offered to design a self-insured employee health benefit plan for the plaintiff to *replace the company's existing Blue Cross policy. Id.* at 1461. The defendants assured the plaintiff that the company would save thousands of dollars each month by self-insuring and buying stop-loss reinsurance.[5] *Id.* The reinsurance contained exclusions which denied coverage to company employees who were on sick leave at the time the reinsurance contract was purchased. *Id.* at 1462 n. 4.

As the primary insurer, the company was concerned that it would be liable for medical costs in excess of $10,000 on a claim if the reinsurer denied coverage. Around the time when the plaintiff was preparing to convert from Blue Cross to self-insurance, the company advised Selman that a 15–year veteran

of the company's factory was on sick leave from work. Blue Cross coverage continued for this employee while he was on sick leave. Advised of the situation, Selman assured all involved that the employee's health benefits would be identical under the new plan. In fact, this ill employee was not covered by the stop-loss reinsurance policy which limited coverage to employees "active" at the time of the new plan's inception. *Id.* at 1462. As a result of this gap in coverage, the company, as primary insurer, incurred over $500,000 in liability to the University of Virginia Medical Center when the employee not covered by the reinsurance policy suffered major heart failure.

The company sued Selman and BCS for professional malpractice in their capacities as insurance professionals. Like Hagmaier, these defendants designed the plan and then became plan administrators, but the only misconduct alleged occurred before the plan was formed. The Fourth Circuit, like the Eleventh Circuit, emphasized that Congress did not intend to preempt "traditional state-based laws of general applicability [that do not] implicate the relations among the traditional ERISA entities." *Coyne & Delany*, 98 F.3d at 1469 (citations omitted). Since the acts complained of occurred before the plan was formed it cannot be said that the claim seeks to regulate the conduct of a plan administrator. *Id.* at 1471.

Like *Perry, Perkins* and *Morstein*, the claim recognized in *Coyne & Delany* offered a remedy to a plaintiff for a loss incurred when the properly administered ERISA plan did not provide the benefits promised by the marketer of the plan. The Ninth Circuit has not yet addressed whether ERISA permits a state law claim for wrongful inducement, but this Court believes that the Ninth Circuit would join the Fourth, Fifth, Sixth and Eleventh Circuits in recognizing a claim for wrongful inducement if presented with a case

---

F.3d at 723 n. 11. While the Court recognizes that the wrongful inducement claims reported to date have been directed at insurance professionals not insurance companies, this is the result of the facts in each individual case. The Court does not agree that ERISA provides insurance companies, as such, with greater protection from state regulation than insurance agents or brokers.

**5.** Apparently, the new arrangement would have the company self-insure each claim up to $10,000 while purchasing reinsurance to cover amounts in excess of $10,000 on any single claim. *Id.* at 1461.

similar to those in other circuits. However, this is not such a case.

The plaintiffs want this Court to recognize a wrongful inducement to establish an ERISA plan claim under circumstances where the only damages alleged in the TAC arise from the management and administration of the ERISA plan.[6] This factual difference between this case and the cases in other circuits is of paramount significance. Initially, ERISA provides these plaintiffs with a right of action to recover the damages alleged in the TAC. 29 U.S.C. §§ 1109, 1132. The third claim in the TAC alleges that each defendant breached the fiduciary duty imposed by ERISA. TAC ¶¶ 103–11. This is not a situation where, absent the state law claim, the plaintiffs are without any remedy to redress the wrongful conduct which caused their damages.

More importantly, because the plaintiffs in this case seek to recover Plan assets lost due to fraud or mismanagement by the Plan's administrator, on these facts the wrongful inducement claim acts as an impermissible state law mechanism for enforcing the duties and obligations imposed by ERISA on those entrusted with the care of ERISA plan assets. See Ingersoll–Rand, 498 U.S. at 142–45, 111 S.Ct. at 484–86 (stating that ERISA's civil enforcement scheme is exclusive remedy for rights guaranteed under ERISA); Pilot Life, 481 U.S. at 52–54, 107 S.Ct. at 1555–57 (same) (quoting Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985)); Farr, 58 F.3d at 1365 (stating that ERISA preempts state laws "that provide remedies for misconduct growing out of the administration of ERISA plans"); see also New York Blues, 514 U.S. at ——, 115 S.Ct. at 1678 (citing Ingersoll–Rand and acknowledging that state laws providing alternate enforcement mechanism relate to ERISA plans). The Ninth Circuit has often recognized that

ERISA preempts state laws which provide remedies for misconduct growing out of plan administration. See Farr, 58 F.3d at 1365; Tingey v. Pixley–Richards West, Inc., 953 F.2d 1124, 1130–31 (9th Cir.1992) (noting exclusive nature of civil enforcement mechanisms provided for in ERISA); Dytrt v. Mountain State Tel. & Telegraph Co., 921 F.2d 889, 897 (9th Cir.1990); Martori Bros. Distribs. v. James–Massengale, 781 F.2d 1349, 1357 (9th Cir.) (Reinhardt, J.) (citing cases), amended by, 791 F.2d 799 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 385 (1986).

This case is distinguishable from other cases alleging wrongful inducement because these plaintiffs are seeking to remedy plan mismanagement under the common law. If the plaintiffs were alleging that the terms of the Plan differ from the terms represented to them by Guardian or Hagmaier and the plaintiffs were seeking to recover for losses sustained due to this difference, the claim would not be preempted by ERISA. However, in this case the plaintiffs are essentially alleging that Hagmaier and Guardian fraudulently represented that the Plan would be established, administered, funded and monitored by ERISA experts, namely Hagmaier and GISC. Because those involved in administering and funding the Plan were not in fact qualified, Hagmaier as the Administrator of the Plan, with the aid of Guardian, was able to mismanage and loot the Plan's assets. Even assuming that state law would provide that the fraudulent representations of ERISA expertise caused the plaintiffs' damages in this case, it is clear that if the Plan had been administered properly, the plaintiffs would have suffered no damages from the fraud. On these facts, the wrongful inducement claim is hopelessly interconnected with the management of the Plan's assets.[7]

---

6. The plaintiffs argue that they were damaged because Hagmaier did not establish a tax-exempt plan as promised, but there should be little doubt that this case is about plan mismanagement. It is quite possible that the Plan's alleged failure to qualify for favorable tax treatment is due to Hagmaier's mismanagement as Plan administrator. It was in this capacity that he set the appropriate level of annual contributions in order for the Plan to qualify for favorable tax treatment.

7. There can be no doubt that a jury trial on the wrongful inducement claim and a bench trial on the breach of fiduciary duty claim would create substantial difficulties in the management of this litigation. To recover their damages using a wrongful inducement claim, the plaintiffs must establish that Hagmaier, as Plan Administrator, mismanaged or stole Plan assets. This inquiry lies at the heart of the breach of fiduciary duty claim.

On the facts before the Court, to allow the plaintiffs to "end-run" ERISA preemption by casting their claim as one for wrongful inducement allows an exception to engulf the rule. Any ERISA breach of fiduciary duty claim relating to the mismanagement of plan assets could then be pleaded as a state law tort beyond ERISA preemption. Plaintiffs would need merely to allege that, before the plan was created, the plan fiduciary fraudulently promised to manage the assets of the ERISA plan properly. If the plan assets were mismanaged later, the plan sponsors could claim that they were fraudulently induced to establish the plan with the wrongdoer as a fiduciary. Just as in this case, but for the wrongful inducement, the plan would never have been established and the wrongdoer would not have had the opportunity to loot the plan.

In theory, the wrongful inducement claim merely regulates conduct which occurred before the creation of a covered plan. However, in practice, this state claim could be employed to remedy misconduct arising out of the administration of an ERISA plan. When employed for this purpose, the wrongful inducement claim is far more closely related to the ERISA plan than the wrongful inducement claims recognized in *Perry, Perkins, Morstein* and *Coyne & Delany. See, e.g., Ingersoll–Rand,* 498 U.S. at 145, 111 S.Ct. at 486 (stating that ERISA preempts state laws which may fairly be assumed to regulate activities governed by ERISA).

The conclusion that ERISA preempts the wrongful inducement claim as alleged in the TAC is consistent with the Supreme Court's analysis in *New York Blues.* In *New York Blues,* the plaintiffs were challenging a New York statute requiring hospitals to collect surcharges from patients covered by a commercial insurer but not from patients insured by Blue Cross/Blue Shield. The surcharges were designed to equalize the premiums charged by Blue Cross and commercial plans to average risk insureds, since without the surcharges Blue Cross's premiums would be higher because it was the only entity insuring the highest risk (and most costly) individuals. 514 U.S. at ——–——, 115 S.Ct. at 1678–79. Although the surcharges were in-

tended to have some economic effect on ERISA medical plans, the Court ruled that this effect was not enough to preempt the New York statute.

The holding in *New York Blues* that ERISA does not preempt state laws imposing surcharges on hospital costs is not too surprising given that "any conclusion other than the one we draw would bar any state regulation of hospital costs." *Id.* at ——, 115 S.Ct. at 1681. State regulation of hospital costs was prevalent before ERISA's enactment, and the Justices did not believe that in passing ERISA Congress intended to preempt these laws. *Id.*

However, there is not much doubt that in *New York Blues* the Court altered the analytic framework to be used when determining whether or not ERISA preempts state law. Writing for a unanimous Court, Justice Souter rejected the Court's previous approach to the interpretation of section 514(a) of ERISA (the preemption section). *Id.* at ——, 115 S.Ct. at 1677 ("[O]ur prior attempt to construe the phrase 'relate to' does not give us much help drawing the line here.... We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term."). "The basic thrust of the preemption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of benefit plans." *Id.* at ——–——, 115 S.Ct. at 1677–78. The Court proceeded to explain why past cases finding ERISA preemption did so because the state statute at issue mandated specific plan benefits or administrative procedures. *Id.* at ——, 115 S.Ct. at 1678. Finally, the Court narrowed the scope of preemption in cases where the state law merely affects the cost of insurance held in an ERISA plan. 514 U.S. at ——–——, 115 S.Ct. at 1680–81 ("[N]ot all regulations that would influence the cost of insurance would relate to employee benefit plans within the meaning of § 514(a).").

In *New York Blues,* the Supreme Court acknowledged one other class of state laws preempted by ERISA. If a state law provides an alternate enforcement mechanism for a right protected by ERISA, the law relates to an ERISA plan. 514 U.S. at ——,

115 S.Ct. at 1678. The Court's reference to this class of laws was brief probably because the New York statute was clearly not of this type. These state laws are preempted because Congress intended for ERISA's civil enforcement scheme to supplant state remedies for misconduct growing out of conduct regulated by ERISA. *See supra* p. 1548.

A wrongful inducement claim does not necessarily provide a remedy for misconduct growing out of the administration of an ERISA plan. It would be quite difficult, if at all possible, to argue in cases like *Perry, Perkins, Morstein* and *Coyne & Delany* that state law is supplying a remedy to vindicate a right protected by ERISA.

However, this Court is confronted with a different species of wrongful inducement claim. The wrongful inducement of PIC by Hagmaier and Guardian only caused damage to the plaintiffs because the Plan was mismanaged. The TAC does not allege that the terms of the Plan differ from the terms promised to PIC by Hagmaier and the Guardian. Rather, the qualifications and expertise of the Plan administrators were not as represented to the plaintiffs. Presumably, this fraud could cause its victims to incur damages recoverable in a wrongful inducement claim. However, ERISA comprehensively regulates the management of plan assets and provides an exclusive civil enforcement scheme to vindicate those rights protected by the statute. Therefore, when the only damages alleged relate to the looting of the plan by the unqualified administrator, the state law claim relates to the ERISA plan and is preempted by federal law.

## II. *The Second Claim for Relief*

■ The second claim alleges that Hagmaier gave some plaintiffs, not previously parties in the PIC Action, fraudulent tax advice. The gravamen of the second claim is that Hagmaier fraudulently told Michael Camp ("M. Camp"), Dennis Camp ("D. Camp") and Beckie Schmitz ("Schmitz") that he was a tax expert and proceeded to advise them to include certain trust income as salary for purposes of calculating the appropriate contributions to the Plan. TAC ¶¶ 96–99. The trust income should not have been in-

cluded as salary and these plaintiffs now owe back taxes and penalties for overstating their personal deductions based on the inflated contributions. *Id.*

The defendants argue that this claim is also preempted by ERISA. The Court does not reach this question because the second claim must be dismissed in that the plaintiffs never requested or received leave of the Court to add a new state law claim and new plaintiffs. This fraudulent tax advice claim appears to have been asserted for the first time in the TAC. The Court's Minute Order of October 23, 1996, did not give the plaintiffs leave to amend the complaint in order to add new plaintiffs and to assert a new claim under state law. All state law claims were dismissed except the wrongful inducement to enter into an ERISA plan claim which was dismissed with leave to amend. At this stage in the litigation, if the plaintiffs wish to add a new state law claim and new plaintiffs, the requisite procedures must be followed so that the Court can analyze the appropriateness of amendment in the proper context. *See, e.g.,* Fed.R.Civ.P. 15(a). Further, it is not clear to the Court what effect adding this claim to the PIC Action would have on the future of the Camp Action.

## III. *Is the RICO Claim Alleged With Sufficient Particularity?*

■ The fourth claim for relief in the TAC alleges violations of RICO. The defendants contend that the plaintiffs fail to plead the predicate acts of mail and wire fraud with particularity. To plead a violation of the mail fraud statute, a plaintiff must allege: (1) a scheme or artifice to defraud; (2) use of the United States mails in furtherance of the scheme; and (3) the defendant acted with the specific intent to deceive or defraud. 18 U.S.C. § 1341; *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1399–1400 (9th Cir.1986). Similarly, to plead wire fraud a plaintiff must allege: (1) a scheme or artifice to defraud; (2) use of United States wires or interstate wires; and (3) specific intent to defraud. 18 U.S.C. § 1343; *Schreiber,* 806 F.2d at 1399–1400.

The fraud must be alleged with particularity. Fed.R.Civ.P. 9(b); *Schreiber,* 806 F.2d at

1400–01. The complaint must allege the *time, place, and specific content of the false representations* as well as the identities of the parties to the misrepresentation. *Schreiber*, 806 F.2d at 1401; *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir.1993). Because Rule 9(b) requires a plaintiff to plead the circumstances constituting fraud, the plaintiff must set forth the circumstances indicating falseness. *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–48 (9th Cir. 1994) (en banc). "To allege fraud with particularity, a plaintiff must set forth ... what is false or misleading about a statement, and why it is false." *Id.* at 1548. The defendants argue that the TAC falls short of the pleading requirements recognized by the Ninth Circuit. Although the plaintiffs come close to pleading some acts of mail or wire fraud with the requisite particularity, the defendants are correct when they argue that the RICO claim must be dismissed for failure to state a claim.

In their opposition to the motion to dismiss, the plaintiffs list almost 20 paragraphs in the TAC which purportedly delineate fraudulent mailings by date, place and manner. Pls.' Opp. to Hagmaier Defs.' Mot. to Dismiss at 5. The vast majority of the paragraphs relied on by the plaintiffs are clearly inadequate to plead RICO in the Ninth Circuit. For example, paragraphs 27, 31, 47 and 48 do not even allege garden-variety fraud under notice pleading standards. Consequently, these paragraphs are inadequate to state a claim for mail or wire fraud under Rule 9(b).

Paragraphs 36 and 37 adequately allege fraud but there is no allegation that the mail or interstate wires were used in furtherance of the fraud. Despite the invitation extended by the plaintiffs' counsel at the hearing on these motions, the Court cannot infer an element necessary to allege mail or wire fraud merely because people usually use the mails to transact business.[8]

Paragraphs 58 and 59 contain the essential allegations on which the plaintiffs rely in arguing that they have satisfied the require-ments of the Ninth Circuit in pleading the predicate acts necessary to a RICO claim. Paragraphs 58(e)–(f) appear to allege fraud but the alleged time of the fraud is "[i]n or about 1990" and there is no allegation that the mail or interstate wires were employed in furtherance of the scheme. *See* TAC ¶¶ 58(e)–(f). Paragraph 58(g) alleges that Hagmaier looted an insurance policy owned by M. Camp. However, the fraud is alleged to have occurred between October 1988 and December 1995. TAC ¶ 58(g). Paragraph 58(h) alleges that Hagmaier looted another insurance policy owned by M. Camp and this paragraph is completely silent as to when the fraud occurred. In these instances, the TAC fails to allege when the fraud occurred with sufficient particularity.

Paragraph 59(b) does not allege the nature of the fraud sufficiently under Rule 9(b) because the allegation is merely that mailings "contained false and fraudulent financial data." TAC ¶ 59(b). More importantly, the fraud is alleged to have occurred "at some point subsequent to the commencement of the alleged Plan." *Id.* This is not sufficient.

Paragraphs 59(c)–(d) do not allege fraud and these paragraphs contain no allegation whatsoever as to when the wrongful conduct occurred. Paragraphs 59(e), 59(i), 59(j), 59(m) and 59(n) fail to allege the use of the mails or interstate wires. Once again, the Court cannot infer elements necessary to allege mail or wire fraud merely because people usually use interstate wires to cash checks. The Court cannot infer the nature or content of the false representations when the TAC merely alleges that Hagmaier mailed a fraudulent and forged document without pleading any facts to show how the document was forged or why it is fraudulent. *See* TAC ¶¶ 59(f); 59(g); 59(h); 59(k); 59(*l*). Although there might be numerous reasons why these alleged mailings were fraudulent and forged, the plaintiffs fail to allege any. The simple allegation that Hagmaier mailed a fraudulent and forged document is insufficient to plead the specific content of the false

---

**8.** The plaintiffs have amended the complaint three times yet still ask the Court to infer an

element necessary to state a claim.

representation. *See In re GlenFed,* 42 F.3d at 1547–48; *Schreiber,* 806 F.2d at 1401.

Paragraph 59(*o*) alleges that Hagmaier looted a life insurance policy owned by the Plan. The paragraph also alleges that Hagmaier represented to the plaintiffs that the policies were worth more than their actual value due to his looting. However, the paragraph fails to provide any time frame at all for either Hagmaier's representations or the actual looting. The plaintiffs cannot plead RICO by merely alleging that during a five year period the defendants managed to defraud the Plan. Paragraph 59(p) contains no allegation as to when the alleged fraud occurred. Paragraph 59(r) falls far short of alleging the time, place or content of the alleged fraud.

Paragraphs 59(s)–(t) do not identify the time of the alleged fraud and fail to allege the content of any fraudulent misrepresentation. Instead, the TAC merely alleges that false, fraudulent and forged documents were mailed. Given *In re GlenFed* and *Schreiber,* this is not sufficient. Since the plaintiffs have failed to sufficiently plead mail and wire fraud, the Court must dismiss the fourth claim in the TAC for failure to state a claim.

### IV. *Motions to Strike*

 The defendants request that the Court strike the jury demand and prayer for punitive damages contained in the TAC. The only claim remaining in the TAC alleges that all defendants breached the fiduciary duty imposed by ERISA. TAC ¶¶ 103–11. There is no right to a jury trial in claims under ERISA for breach of fiduciary duty. *See Pane v. RCA Corp.,* 868 F.2d 631, 636–37 (3rd Cir.1989) (Gibbons, C.J.); *Blau v. Del Monte Corp.,* 748 F.2d 1348, 1357 (9th Cir. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Diduck v. Kaszycki & Sons Contractors, Inc.,* 737 F.Supp. 808, 810–12 (S.D.N.Y.1990) (citing cases). There is likewise no right to an award of punitive damages on a claim based on ERISA. *See Pilot Life,* 481 U.S. at 52–54, 107 S.Ct. at 1555–57; *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1462–65 (5th Cir.1986), *cert. denied,* 479 U.S. 1034,

107 S.Ct. 884, 93 L.Ed.2d 837 (1987); *Moreland v. Behl,* No. C–92–1238 MHP, 1996 WL 193843, at *17–*18 (N.D.Ca. Apr. 17, 1996). Judge Patel's analysis of the current state of the law in the Ninth Circuit on the availability of punitive damages in actions for breach of fiduciary duty is persuasive. *See Moreland,* 1996 WL 193843, at *17–*18.

For the foregoing reasons it is ORDERED that,

1. The first, second and fourth claims in the Third Amended Complaint in the PIC Action are dismissed. No further leave to amend is granted.

2. The jury demand is stricken from the Third Amended Complaint in the PIC Action.

3. The prayer for punitive damages is stricken from the Third Amended Complaint in the PIC Action.