James STEELE; Randa Steele; James Steele, Jr., et al., Plaintiffs–Appellants,

v.

HOSPITAL CORPORATION OF AMERICA, a West Virginia Corporation; General Health Ser., a Delaware corporation; Stuart Wyckoff, M.D., et al., Defendants–Appellees.

No. 92–17035.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 18, 1994.

Decided Sept. 19, 1994.

C. Frederick Pinkerton, Reno, NV, for plaintiffs-appellants.

Mark H. Lynch, Covington & Burling, Washington, DC, and Theodore D. Gamboa, Osborne and Gamboa, Reno, NV, for defendants-appellees.

Before: WALLACE, Chief Judge, POOLE and CANBY, Circuit Judges.

WALLACE, Chief Judge:

Four former patients of an adolescent psychiatric care unit and their parents (patients) brought suit under the Racketeer Influenced and Corrupt Organizations Act of 1970 (RICO), 18 U.S.C. § 1961–1968, against Dr. Stuart Wyckoff, director of the adolescent care unit at Truckee Meadows Hospital (hospital), General Health Services, Inc., Health Services Acquisition Corp., and Hospital Corporation of America. Patients claimed that Wyckoff and the hospital had conspired to bill insurance companies for services that were not provided or were inappropriate. The complaint also asserted pendent claims under Nevada law, including a claim under the Nevada RICO statute, and claims for false imprisonment, common law fraud, and breach of contract.

On motions for summary judgment, the district court ruled against the patients on the state and federal RICO claims, holding that they did not have standing under RICO. The remaining pendent claims were dismissed without prejudice. The patients appealed. The district court had jurisdiction pursuant to 18 U.S.C. § 1964(c). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

## I

The civil RICO provision, 18 U.S.C. § 1964(c), allows "[a]ny person injured in his business or property by reason of a violation of" RICO to sue and, if successful, recover treble damages and attorney's fees. This limitation to a person "injured in his business or property" has a "restrictive significance," *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979), which helps to assure that RICO is not expanded to provide "a federal cause of action and treble damages to every tort plaintiff." *Oscar v. University Students Co-op Ass'n*, 965 F.2d 783, 786 (9th Cir.) (en banc) (*Oscar*), *cert. denied*, —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

■ Thus, we have held that "a showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest.'" *Id.* at 785, *quoting Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir.1990). Here, the district court held that because the patients did not show any proof of concrete financial loss, they lacked standing. The district court explained that it was the insurance companies and not the patients themselves who suffered financial loss from the allegedly fraudulent health care billings. The district court stated that the patients failed to show that they ever paid out any of their own money as a result of the alleged scheme, and thus could not show concrete financial loss. We review de novo the district court's summary judgment. *Jones v. Union Pac. R.R.*, 968 F.2d 937, 940 (9th Cir.1992).

## II

■ It is not enough that the patients show that their insurance company had to pay out more than it otherwise would have without the alleged RICO violation. This does not constitute financial loss to them. In *Oscar*, we illustrated the financial loss requirement with a hypothetical example: "If Oscar's Maserati was smashed, or her house was burned down, she is injured in a variety of ways. However, if her insurance pays the full cost of replacing these items, she has suffered no *financial* loss." *Oscar*, 965 F.2d at 787 n. 5 (emphasis in original). Similarly, in this case, if the patients have paid none of the allegedly excessive charges out of their own pockets because those charges were covered by insurance, then they have suffered no financial loss.

The patients argue that they have suffered financial loss because the excessive charges depleted their insurance benefits. Read, father of one of the adolescent patients, stated in his deposition, "I could have used some of

those [insurance] benefits for myself." However, he does not specify an instance where he had to pay a claim out of his own funds because his insurance had been exhausted. He has not described a concrete financial loss, but rather a speculative injury, contingent on actually seeking medical care for himself. We have held that speculative injuries do not serve to confer standing under RICO, unless they become concrete and actual. *See Oscar*, 965 F.2d at 787; *Imagineering, Inc. v. Kiewit Pacific Co.*, 976 F.2d 1303, 1311 (9th Cir.1992) (*Imagineering*), *cert. denied*, — U.S. —, 113 S.Ct. 1644, 123 L.Ed.2d 266 (1993).

Steele states in his deposition that when his son was admitted at a different facility, he had to pay the whole bill himself because there were no insurance funds left. However, proof of this payment would be insufficient to confer RICO standing, because it alone does not show that the payment was caused by the alleged overbilling scheme at the hospital, as distinguished from some other cause. "In order to maintain a cause of action under RICO ... the plaintiff must show not only that the defendant's violation was a 'but for' cause of his injury, but that it was the proximate cause as well." *Imagineering*, 976 F.2d at 1311, *citing Holmes v. Securities Investor Protection Corp.*, — U.S. —, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). There must be a direct relationship between the injury asserted and the injurious conduct alleged. *Id.*

The record also reveals two payments made to the hospital directly by patients, instead of by their insurance company. Smith paid approximately $500 directly to the hospital. Steele paid $700. However, the record does not reveal what these payments were for and there is no explanation of how those charges were related to the allegedly fraudulent overbilling scheme. The charges may have been co-payments or payments for other items not covered by insurance, rather than a result of any overbilling.

Thus, the patients have failed to show that there is a genuine issue of material fact as to whether these charges constitute injuries which were proximately caused by the alleged overbilling scheme.

### III

The district court also correctly dismissed the state law RICO claim by adopting its analysis of the federal RICO claim. The Nevada statute, like the federal statute, also limits standing to those "injured in business or property by reason of any violation" of the state racketeering statute. Nev.Rev.Stat. § 207.470 (1991). Nevada courts have interpreted the state RICO statute consistently with the provisions of federal RICO. *See, e.g., Allum v. Valley Bank of Nevada*, 109 Nev. 280, 849 P.2d 297, 298 n. 2 ("Nevada's racketeering statutes ... are patterned after the federal [RICO] statutes"), *cert. denied*, — U.S. —, 114 S.Ct. 166, 126 L.Ed.2d 126 (1993). Thus, under our analysis of the federal RICO claim, we affirm the district court's summary judgment on the state RICO claim as well.

**AFFIRMED.**