ARKANSAS BLUE CROSS AND BLUE SHIELD, a Mutual Insurance Company, and its affiliate HMO partners, Inc.; Health Care Service Corp., a Mutual Legal Reserve Company, (dba Blue Cross Blue Shield of Illinois (aka HMO Illinois)), and its subsidiary, BCI HMO, Inc.; Anthem Insurance Companies, Inc., and its subsidiaries, Anthem Blue Cross Blue Shield, Anthem Blue Cross Blue Shield of Connecticut, Southeastern Group, Inc., Southeastern United Medgroup, Inc., and Community Insurance Company; Blue Cross and Blue Shield of Missouri, Inc., and its subsidiaries, RightChoice Managed Care, Inc. (dba Alliance Blue Cross Blue Shield), Healthy Alliance Life Insurance Company, HMO Missouri, Inc. (dba BlueChoice), and RightChoice Insurance Company; Blue Cross and Blue Shield of Kansas City; Nordian Mutual Insurance Company (dba Blue Cross Blue Shield of North Dakota), and its affiliate, Lincoln Mutual Life and Casualty Insurance Company, and Wellmark, Inc., and its subsidiaries, Wellmark of South Dakota, Inc., Wellmark Community Insurance, Inc., and Wellmark Health Plan of Iowa, Inc., Plaintiffs,

v.

PHILIP MORRIS, INC.; R.J. Reynolds Tobacco Company; Brown & Williamson Tobacco Corporation; B.A.T. Industries, P.L.C.; British American Tobacco company, Ltd.; Lorillard Tobacco Company; Liggett Group, Inc.; Liggett & Myers, Inc.; United States Tobacco Company; The Tobacco Institute, Inc; The Smokeless Tobacco Council, Inc.; The Council for Tobacco Research–U.S.A. Inc.; Hill and Knowlton, Inc., and Unknown Corporations A–Z, Defendants.

No. 98 C 2612.

United States District Court,
N.D. Illinois,
Eastern Division.

April 6, 1999.

James R. Carroll, Caesar A. Tabet, William Robert Quinlan, Quinlan & Crisham, P.C., Chicago, IL, for Arkansas Blue Cross

and Blue Shield, Health care Service Corp., Anthem Ins. Companies, Inc., Blue Cross and Blue Shield of Missouri, Inc., Blue Cross and Blue Shield of Kansas City, Nordian Mut. Ins. Co. and Wellmark, Inc., plaintiffs.

David Bruce Love, Thomas James Frederick, Dan K. Webb, Jeffrey Mark Wagner, Joseph J. Zaknoen, Andrew John Schaefer, Winston & Strawn, Chicago, IL, for Philip Morris, Incorporated, defendant.

Michael A. Pope, Cathy McNeil Stein, McDermott, Will & Emery, Chicago, IL, Thomas F. Gardner, Thomas P. McNulty, Jones, Day, Reavis & Pogue, Chicago, IL, Martin R. Glick, Howard, Rice, Nemerovski, Canady, Robertson & Falk, San Francisco, CA, for R.J. Reynolds Tobacco Company, defendant.

Fred A. Smith, III, Cathleen M. Jareczek, Sedgwick, Detert, Moran & Arnold, Chicago, IL, Kevin J. Dunne, Shelley L. Brittman, Nicholas W. Heldt, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Brown & Williamson Tobacco Corporation, defendant.

Michael T. Hannafan, Cory A. Johnson, Mark Alan Cisek, Michael T. Hannafan & Associates, Ltd., Chicago, IL, Kathleen L Turland, Joseph M McLaughlin, Patrick D Bonner, Jr, Simpson, Thacher & Bartlett, New York City, for B.A.T. Industries P.L.C., defendant.

Michael T. Hannafan, Cory A. Johnson, Mark Alan Cisek, Chicago, IL,, for British American Tobacco Company, Ltd., defendant.

Gary Michael Elden, Gregory Campbell Jones, George Robert Dougherty, Tina M. Bagby, Grippo & Elden, Chicago, IL, for Lorillard Tobacco Company, defendant.

Harold C. Wheeler, James A. Morsch, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for Liggett & Myers, Inc., defendant.

Edward Michael Crane, Mark Edward Rakoczy, Deborah G. Solmor, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for United States Tobacco Company, defendant.

Paul L. Price, Price, Tunney, Loughnane, Reiter & Bruton, Chicago, IL, Amy Kathleen Collingnon, Daniel W Farroll, Larry E Hepler, Borroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, IL, for Tobacco Institute, Inc., defendant.

Royal B. Martin, Jr., Robert S. Grabemann, Martin, Brown & Sullivan, Ltd., Chicago, IL, for The Council for Tobacco Research – U.S.A., Inc., defendant.

George G. Argionis, Clausen Miller P.C., Chicago, IL, Michael T. Trucco, Stamos & Trucco, Chicago, IL, for The Smokeless Tobacco Research Council, Inc., defendant.

Deborah Lynn Kuhn, Altheimer & Gray, Chicago, IL, for Hill and Knowlton, Inc., defendant.

Harold C. Wheeler, James A. Morsch, Chicago, IL, for Unknown Corporations, A–Z, Liggett Group, Inc., defendant.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

This action is one of three essentially identical actions brought by various Blue Cross and Blue Shield medical providers against numerous tobacco companies and others, alleging violations of federal RICO and antitrust laws, with pendent claims alleging violations of state law. Defendants seek dismissal under Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim. Similar motions were brought in the other two cases. The motion in the Western District of Washington was granted by Judge Rothstein. The motions in the Eastern District of New York case have been denied by Judge Weinstein.

The parties before me have extensively briefed the issues. There have also been numerous decisions addressing similar actions in addition to the opinions by Judge Weinstein and Judge Rothstein. This opinion will attempt to avoid repeating ev-

erything that has already been said on this subject and will be limited to an explanation of why I agree with Judge Weinstein's conclusion that plaintiffs have stated a claim for relief.

The facts alleged in plaintiffs' amended complaint may be summarized as follows: The plaintiffs are seven independent, mainly not-for-profit Blue Cross or Blue Shield Plans ("Blue Cross"). Blue Cross provides 68 million Americans with health plan financing, including benefits for tobacco related illnesses. Blue Cross has incurred billions of dollars in costs attributable to illnesses related to the use of tobacco. Its injury is economic. The defendant tobacco companies intentionally caused its injury through a continuing conspiracy that began in 1953. The conspiracy's purpose was to addict millions of Americans, including members of Blue Cross plans, to smoking cigarettes and other tobacco products. Their success has resulted in lung, throat and other cancers, heart disease, stroke, emphysema and other diseases. Smoking related illnesses are the leading cause of premature death in the United States. Non-smokers exposed to tobacco smoke are also affected. The conspiracy involved intentional misrepresentations about the safety of nicotine and its addictive properties, marketing efforts targeting children, and agreements not to produce or market safer cigarettes.

■ The basic argument made by defendants in these motions is that any injury to plaintiffs is indirect and too remote in terms of proximate cause to be legally redressable in this action. This argument has been accepted by some courts. Thus, in *Regence Blueshield v. Philip Morris, Inc., et al.,* 40 F.Supp.2d 1179, 1999 U.S. Dist. LEXIS 1820 (W.D.Wash.1999), the court concluded that plaintiffs' injuries were "derivative" of personal injuries to smokers because it would be impossible to separate the smokers' injuries from that of the insurers and there would thus be a possibility of duplicative recovery. *Id.* at 1184. That conclusion has been rejected by the Seventh Circuit, however, which (in a somewhat different but still applicable context) has held that Blue Cross has an interest that is separate from that of its insureds for which it may seek recovery in appropriate cases. *Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic,* 65 F.3d 1406 (7th Cir.1995). *See also United States v. Aetna Casualty & Surety Co.,* 338 U.S. 366, 379, 70 S.Ct. 207, 94 L.Ed. 171 (1949). The Ninth Circuit has also reached the opposite conclusion in holding that an insured could not sue under RICO for money paid by his insurance company because only the insurance company has suffered the economic loss. *Steele v. Hospital Corp. of America,* 36 F.3d 69 (9th Cir.1994). Indeed, as Judge Weinstein noted in *Blue Cross and Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.,* 36 F.Supp.2d 560 (E.D.N.Y.1999) (slip op.) ("Blue Cross and Blue Shield"), it is unlikely that persons covered by Blue Cross plans could obtain reimbursement from Blue Cross for any damages paid in this case because they never paid the amounts that Blue Cross is seeking to recover. At 571.

Thus, the injury suffered by plaintiffs in this case is not derivative. It is the plaintiffs' own economic injury. Defendants' additional argument is that any wrong is not the proximate cause of Blue Cross' injury. Whether a plaintiff has sufficiently alleged facts from which proximate cause may be found is governed by *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). In that case the Supreme Court held that SIPC could not bring a RICO action because it could not show that defendant's actions were the proximate cause of its injuries. Judge Weinstein, in the companion case to this one, has explained that under the *Holmes* analysis, proximate cause is sufficiently alleged in the complaints in these cases. First, the *Holmes* court was concerned that if an injury were too indirect, it might be too difficult to determine whether the plaintiff's injuries

are due to defendant's conduct or to intervening third causes. *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311. But in the present tobacco cases, Judge Weinstein noted that plaintiffs may well be able to bring reliable statistical and expert evidence to show the percentage of damage caused by defendants' actions. In addition, they will not have to be concerned with contributory negligence because the torts alleged are intentional. *Blue Cross and Blue Shield,* at 575–76. The *Holmes* court was also concerned about the apportionment of damages among various claimants. As noted above, however, and by Judge Weinstein, *id.* at 576, the damages claimed in this case are separate from the damages suffered by smokers. Plaintiffs "seek recovery only for the economic burden of those medical claims and procedures which they directly paid as a result of tobacco use." *Id.* Finally, the *Holmes* court was concerned that the SIPC was not the best plaintiff, and certainly not the only plaintiff, who could vindicate defendant's wrongdoing. In contrast, in the present cases Blue Cross is the best, and under some case law perhaps the only, plaintiff who can bring this claim because no other potential plaintiff can claim economic injury. It is the only one who "can claim the 'injury to business or property' required by the RICO statute." *Id.* at 576. *See, e.g., Marshfield Clinic, supra;* 65 F.3d at 1414.

■ Judge Weinstein in his very thoughtful opinion also addressed the issue that somehow the injuries complained of in this suit are too remote in the sense of foreseeability. To the contrary, he found, if "as alleged, the defendants conducted a decades long scheme to deceive the American public and its health providers concerning the addictive characteristics and health hazards of their tobacco products, and if they conspired to deprive smokers of safer or less addictive tobacco products, then their actions can properly be characterized as illegal and deliberate criminal fraud." *Blue Cross and Blue Shield* at 580–81. "[T]he defendants would not have been in a position to realize the enormous profits of its industry without the compelled and unknowing subsidization by organizations such as the Blues." *Id.* at 584. The amended complaint in this case contains extensive and detailed allegations of specific statements in defendants' internal memoranda that, if true, indicate long term knowledge of the bad health effects of smoking, of their attempts to keep that information from smokers and the plaintiffs as well as others (including legislative bodies), of alleged outright lies in marketing and other statements regarding the safety of smoking, and of attempts to increase the amount of nicotine (the addictive ingredient in cigarettes) while denying the same. I agree that if those were shown to be true, plaintiffs' injuries would have been foreseeable and direct.

Judge Weinstein discussed other reasons, including the relationship of common law and other kinds of actions to the present one that support a finding of proximate cause in this case. *Id.* at 582–84. He also discussed the important and unique role of Blue Cross providers in the health care field in this country. Individuals, he noted, cannot afford health care anymore without insurance. Plaintiffs indeed "decide what medical procedures will be offered, to whom they will be offered and when and how they will be offered." *Id.* at 586–87. Thus an economic injury such as alleged in these complaints "is a direct threat to the availability of affordable health care to Americans...." *Id.* If, as alleged, plaintiffs had not had to spend more than a billion dollars as a result of smoking related illnesses, more would be available to cover health procedures in other areas.

All of plaintiffs' claims are subject to proof of course. But for the reasons stated in this opinion and the reasons stated in Judge Weinstein's much more extensive analysis, I agree that the allegations of the complaint are sufficient to withstand a mo-

tion to dismiss under Rule 12(b)(6), Fed. R.Civ.P.

I have considered the recent Third Circuit opinion in *Steamfitters Local Union 420 Welfare Fund v. Philip Morris, Inc.,* 171 F.3d 912 (3d Cir.1999), in reaching my conclusion. In that case the Third Circuit rejected various union health and welfare fund suits against tobacco companies in which the funds also alleged RICO and antitrust violations. Analyzing the claims principally under the antitrust laws, the court agreed with many of the arguments made by Blue Cross in this case: that increased costs from treating tobacco related illnesses were a cognizable injury, 171 F.3d at 921, n. 4; that plaintiffs direct injury is "fundamentally different from a traditional insurer-against-wrongdoer subrogation claim," *id.* and were not duplicative of those suffered by smokers, *id.* at 930; that there may be a causal connection between plaintiffs' injuries and defendants' conduct, *id.* at 926; that there might be proved an antitrust violation from a conspiracy to keep a safer product off the market, *id.* at 926; that the claims of direct injury might meet the third and fourth factors discussed in *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983), *id.* at 927; and that plaintiffs' damages were potentially calculable using statistical analysis, *id.* at 929–930. The court nevertheless affirmed the district court's dismissal of the case on the grounds that plaintiffs' injury was not shown to be a necessary step in the success of defendants' conspiracy, *id.* at 923, and, conversely, that plaintiffs would have covered the costs of their insureds' illnesses regardless of defendants' conspiracy, *id.* at 928. It also thought plaintiffs' damages too speculative. *Id.* at 929–30. At least in the present case, however, Blue Cross has alleged that its injury enabled defendants' conspiracy to succeed. If defendants had not been able to reap the benefits of the billions of dollars in payments made by Blue Cross, smokers would have quit sooner, or died sooner or not smoked at all, all of which would have reduced defendants' profits presumably by great amounts. Under plaintiffs' theory, it was thus important to the success of the conspiracy that Blue Cross and the people it covered be misled about the dangers of smoking for as long as possible. Although Blue Cross has continued to cover the costs of smoking related illnesses, there would have, according to it, been fewer illnesses related to smoking. In addition, as discussed above, plaintiffs claim injury from their inability to cover other diseases and procedures because of the huge ongoing cost of paying for smoking related illness. With regard to the court's conclusion regarding speculative damages, in view of its other statements agreeing that it might be possible to prove damages, I assume that its affirmance of the lower court, while mentioning its belief in the difficulty of proof in this area, did not depend on this factor. At any rate, the Blue Cross plaintiffs, because of their size, are possibly in a unique position to present the kind of statistical proof that will be required to prove their case. They may be unsuccessful but in the present case they have alleged sufficient facts to go forward with discovery.

Judge Weinstein has set an early trial date in the case before him. He also limited that trial to the RICO claims in the interest of judicial economy. Discovery in the present case has already begun. It makes sense, however, to defer trial until after the trial in the Eastern District of New York. It would also simplify matters, as Judge Weinstein concluded, to conduct discovery and try only the RICO claim. I will, however, give the parties 21 days to submit any argument against limiting the case to the RICO claim.