**IMPRESS COMMUNICATIONS, et al., Plaintiffs,**

v.

**UNUMPROVIDENT CORP., et al., Defendants.**

**No. CV 03–934 NM(RCx).**

United States District Court, C.D. California.

Oct. 24, 2003.

Don Howarth, Suzelle M. Smith, Brian David Bubb, Howarth & Smith, for Plaintiffs.

Ethan Lipsig, Ned N. Isokawa, Paul Hastings Janofsky & Walker, San Francisco, CA, Samuel Y. Edgerton, III, Brandon Scott Reif, Nash & Edgerton, Hermosa Beach, CA, for Defendants.

Stephen H. Harris, Paul Hastings Janofsky & Walker, Los Angeles, CA, Patrick W. Shea, Paul Hastings Janofsky & Walker, Stamford, CT, for Plaintiffs/Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

MANELLA, District Judge.

### I. INTRODUCTION

On December 26, 2002, Impress Communications ("Impress") and Jeff D. Chiarella ("Chiarella") (collectively, "Plaintiffs") filed this class action against Unumprovident Corp.; Benefits Technologies, Inc. (d/ b/a Benefit America); EBA Advisory Services, LLC; Unum Life Insurance Co. of American; Provident Life and Accident Insurance Co.; the Paul Revere Life Insurance Co.; and Colonial Life & Accident Insurance Co. (collectively, "Defendants"). The gravamen of the Complaint is that Defendants defrauded Plaintiffs into buying disability insurance policies from Defendants, though Defendants did not intend to provide the coverage as promised in the policies. Specifically, Plaintiffs assert claims for: (1) breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA") and (2) violation of the prohibited activities section under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

On February 7, 2003, Defendants removed the action to this court, asserting federal question jurisdiction because ERISA preempted Plaintiffs' state law claims. In the Order Denying Plaintiffs' Motion to Remand to State Court, this court found that ERISA preempted Plaintiffs' claims, because the claims related to ERISA plans and Plaintiffs' sought-after remedy of rescission was a possible remedy under ERISA. Currently before the court is Defendants' Motion to Dismiss.

### II. FACTUAL BACKGROUND [1]

Plaintiffs filed this class action on behalf of California employers and individuals who purchased group and individual disability insurance policies from Defendants, but who have not filed a claim for benefits. Impress purchased group disability policies on behalf of its officers, directors, and employees in 1995, and renewed them though 2002. Chiarella purchased an individual disability insurance policy from Defendants in 1992, and renewed it through 2002. Plaintiffs do not allege that they

---

1. These facts, taken from the First Amended Complaint ("FAC"), are assumed true for purposes of this motion only.

filed claims under the policies or that they were denied any benefits sought. Indeed, the class they purport to represent expressly excludes "any individual person or persons that [sic] sought compensation and/or filed a claim under such disability policies ... and was denied coverage and/or actually received coverage." FAC ¶ 21. Nor do Plaintiffs claim to be current policy holders. FAC ¶ 11; Mot. at 9.

Plaintiffs contend that Defendants fraudulently induced them to join the plans, and that Defendants never intended to honor the terms and conditions of the plans. *See* FAC ¶ 30 ("Defendants made representations to Plaintiffs and class members of material fact stating that should a claim be made it would be fairly processed and paid. Defendants' representations were false, among other things, in that Defendants had practices as set forth herein to arbitrarily deny and delay the processing of and payment of benefits for such claims."). Instead of complying with the terms and conditions of the plans, Defendants allegedly engaged in unlawful and wrongful acts, including: instituting goals for cost savings to be attained through denial of claims; providing financial incentives for doctors to deny claims; implementing bonus plans rewarding company management for denying as many claims as possible; and employing prac-

tices that pressure claims handlers to deny claims without giving them a proper review. *See* FAC ¶ 25.

Defendants sold Plaintiffs the disability policies without disclosing these wrongful acts. Plaintiffs contend that because they purchased the policies on the basis of Defendants' affirmative misrepresentations, the policies are void. Plaintiffs seek damages, restitution, disgorgement of profits, injunctive relief, and costs of suit including attorneys' fees for violating ERISA and RICO.[2]

Defendants move to dismiss Plaintiffs' ERISA claim on the ground that Plaintiffs lack standing under Article III of the Constitution because Plaintiffs suffered no legally cognizable injury. Defendants also argue that Plaintiffs lack standing for injunctive relief under ERISA because they no longer have policies with Defendants and therefore would not benefit from an injunction.[3] Defendants also move to dismiss Plaintiffs' RICO claim on the ground that Plaintiffs have not alleged the tangible, financial loss required to establish standing under the RICO civil remedies statute.[4]

## III. DISCUSSION

In order for their claims to survive this motion to dismiss, Plaintiffs must have al-

---

**2.** Plaintiffs also claim that they are entitled to rescission of the contract. FAC ¶ 29. Rescission, however, is "less a remedy and more a ... conceptual apparatus that leads to the remedy." Dan B. Dobbs, *Law of Remedies,* 414 (1993). Plaintiffs have stated that they seek return of their premiums after rescission of the contract. Plaintiffs' Opposition to Motion to Dismiss ("Opp.") at 8. Elsewhere, they state that Defendants have been unjustly enriched through receipt of these premiums. FAC ¶¶ 36, 53. Finally, they seek the funds retained by Defendants through unjust enrichment through a constructive trust. *Id.* at 53. These allegations lead this court to conclude that the true remedy sought by Plaintiffs is restitution and/or disgorgement of the premi-

ums through the mechanism of a constructive trust, rather than rescission alone. Indeed, rescission without monetary relief would be meaningless because Plaintiffs are no longer policy holders. FAC ¶ 11; Defendants' Motion to Dismiss ("Mot.") at 9.

**3.** In addition, Defendants contend that any claims for relief which are pecuniary fail because the applicable ERISA section allows only injunctive or "other appropriate equitable relief."

**4.** In addition, Defendants allege that Plaintiffs have not stated a claim for violation of the RICO prohibited activities statute.

leged an injury that will provide them standing under either ERISA or RICO.

## A. *ERISA*

### 1. *Applicable Standard*

■ While the issue of standing is distinct from that of subject matter jurisdiction, standing also poses a critical jurisdictional limitation. *See* Schwarzer et al., Federal Civil Procedure Before Trial ("Schwarzer") § 2:1204 (1998). Thus, a court lacks subject matter jurisdiction over a case where the plaintiff lacks standing to sue.

■ A Rule 12(b)(1) motion is a challenge to the court's jurisdiction over a matter. *See* Fed.R.Civ.P. 12(b)(1). In deciding a Rule (12)(b)(1) motion, the court is not limited to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. *Ward v. Internal Revenue Serv.*, 2002 WL 1988186 at *1 (C.D.Cal. June 19, 2002) (citing *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988)); *see also White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction to hear the action. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ Article III of the United States Constitution provides the following standing requirements: (1) the plaintiff must have suffered an injury in fact, an invasion of a legally-protected interest, which is actual, not hypothetical; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The plaintiff bears the burden of establishing the elements of standing. *United States v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice; on a motion to dismiss, the district court presumes "that general allegations embrace those specific facts that are necessary to support the claim[.]" *Lujan*, 497 U.S. at 889, 110 S.Ct. 3177.

### 2. *Application*

Plaintiffs seek relief under ERISA provisions found at 29 U.S.C. § 1104 (fiduciary duties), § 1109 (liability for breach of fiduciary duty), and § 1132(a)(3)[5] (civil enforcement).

### i. *Breach of Contract Based on "Diminished Value Theory"*

■ Defendants claim that Plaintiffs lack standing under Article III for their ERISA claims, basing much of their argument on the analysis of a "diminished market value theory" explored recently in the Third Circuit. The crux of this theory is that the value of Plaintiffs' "insurance was diminished by Defendants' allegedly improper claims procedures." Mot. at 4.[6]

---

**5.** Although Plaintiffs' Complaint does not specify the ERISA section under which they seek relief, Defendants assert, and Plaintiffs do not dispute, that the claim falls under § 1132(a)(3). *See* Mot. at 4; Opp. at 4.

**6.** While Plaintiffs dispute Defendants' characterization of their claims, it is uncontested that Plaintiffs allege they received something

of value, but less than they purchased. *See* Opp. at 2 (Defendants' policies allegedly "left much of the risk of economic loss on Plaintiffs"); *id.* at 8 (alleging Defendants "took Plaintiffs' money and did not take all of the risk of injury"). There can be no question that Plaintiffs are alleging they received

Two cases in particular, *Horvath v. Keystone Health Plan East, Inc.,* 333 F.3d 450 (3d Cir.2003) and *Doe v. Blue Cross Blue Shield, of Maryland, Inc.,* 173 F.Supp.2d 398 (D.Md.2001), address this theory.

In *Horvath,* the plaintiff was the benefits administrator at a law firm for which the defendant provided a healthcare plan and was a member of that plan. *Id.* at 452. The plaintiff filed her complaint as a proposed class action, contending that the defendant had breached its fiduciary duty by failing to disclose information regarding physician incentives that could have decreased the level of care provided. *Id.* Although the plaintiff did not allege that the care she received was substandard, she sought injunctive relief requiring disclosure of physician incentive information and restitution and/or disgorgement for the amount that the employer had allegedly overpaid in premiums as a result of the decreased level of care provided by the defendants. *Id.* at 453.[7] The court referred to this latter claim as one based on a "diminished value theory." *Id.* at 457. The court found standing for an injunction, but found no standing for claims of restitution or disgorgement. *Id.* at 456.

With regard to injunctive relief, the *Horvath* court found that the injury required under Article III could exist solely by the invasion of certain rights created by ERISA, including the rights to receive certain information and to have the defendant act in a fiduciary capacity. *Id.* These are the rights that the plaintiff claimed had

been violated. *Id.* at 453. Thus, the plaintiff had established standing under Article III as to her request for injunctive relief. *Id.* at 456.

The court found that the individual nature of the claims for restitution and disgorgement, however, required a demonstration of individual loss. *Id.* The plaintiff's individual loss was premised on a diminished value theory of recovery which the court found problematic. *Id.* at 456–57. First, the plaintiff had not suffered an economic harm because she could not claim that benefits were compromised or diminished by virtue of the defendant's management of the plan. *Id.* at 457.[8] Moreover, reliance on such a theory would require a determination of the actual value of the insurance provided, an extremely complex task. *Id.* Finally, the plaintiff's loss rested on the assumption that the employer would pass the savings on to its employees. *Id.* The court found this loss too speculative to serve as the basis of a claim for restitution or disgorgement, and concluded that the plaintiff lacked standing to seek relief on these claims. *Id.* at 457.

In *Doe,* plaintiffs in a group health plan filed a complaint similar to that described in *Horvath,* asserting a claim under a diminished market value theory and seeking disgorgement of the excess premiums paid. *Id.* at 400.[9] The plaintiffs alleged that the practices of their insurance plan's utilization review agent had diminished the value of their policies. *Id.* They did not allege

---

"less" than they paid for. This is the essence of a diminished value theory.

7. The claim as stated originally called for "restitution and/or disgorgement of the amount she and other members of the putative class allegedly overpaid as a result of the defendant's failure to disclose such information." *Id.* Subsequently, the court denied the motion for class certification. *Id.* The denial of this motion resulted in a single plaintiff

who had not paid premiums directly to the defendant but whose premiums were paid by her employer.

8. Here the court relied on its conclusion in a RICO case with very similar facts, *Maio v. Aetna, Inc.,* 221 F.3d 472 (3d Cir.2000).

9. Although not explicitly stated, it appears the *Doe* plaintiffs may still have been participants in the health plan of which they complained.

that they had ever been denied benefits. *Id.* at 399. Unlike the plaintiff in *Horvath*, however, these plaintiffs had contributed to the costs of coverage they received. *Id.* The court in *Doe* found that the plaintiffs had not ·alleged an "injury in fact," the first element required to establish Article III standing. *Id.* at 403.[10]

The court explained its rationale as follows. Standing under a diminished market value theory of injury would require recognition of a new form of injury, one that has not been recognized in ERISA case law because standing has been consistently tied to denial of specific benefits. *Id.* at 404. Due to the complex and reticulated nature of ERISA, courts have been reluctant to recognize new causes of action under that statute. *Id.* at 405. Furthermore, remedies already exist under ERISA to preserve the market value of policies: participants may contest the denial of specific claims and, if dissatisfied with that process, file suit in federal court. *Id.*

Finally, the court concluded that contract law appeared to govern the issue as framed by the plaintiffs. The insurance policy was a contract which would be breached if the insurer were to wrongfully decline to provide benefits covered under that contract. The alleged injury—that the health care provider might deny benefits in the future due to a restrictive reading of the insurance policy, thus diminishing the value of the policy—was not a cause of action recognized in contract law.

*Id.* at 406. Without an actual breach, which would require facts associated with individual claims rather than a class action, the contract claim was not actionable. *Id.* at. 406–407. Thus, the court found the plaintiffs lacked standing under Article III for their ERISA claim. *Id.* at 407.[11]

This court finds the reasoning in *Horvath* and *Doe* persuasive as applied to Plaintiffs' claims for restitution and disgorgement. · *See Horvath*, 333 F.3d 450; *Doe*, 173 F.Supp.2d 398. The plaintiffs in *Doe* and *Horvath* could not allege that they had been provided fewer benefits based on the defendants' internal policies than had been contracted for. Thus, any injury was necessarily predicated on the anticipated denial of future benefits. Such injury was purely speculative and insufficient to confer standing under Article III. Plaintiffs here cannot allege that they have been provided with less disability coverage than they contracted for. Indeed, Plaintiffs here have never sought *any* benefits under Defendants' plans. An allegation that Defendants' administration of the plan might result in denial of future benefits is purely speculative and does not suffice to constitute a breach of contract. Without this breach, Plaintiffs have suffered no injury and thus have no standing to pursue their ERISA claim.[12]

Regarding injunctive relief, the reasoning in *Horvath* that allows standing based on the statutory rights conferred by ERISA does not help Plaintiffs here. First, Plaintiffs do not define what they

**10.** The court relied heavily on the decisions in *Maio*, 221 F.3d 472, and *In re Managed Care Litigation*, 150 F.Supp.2d 1330 (S.D.Fla. 2001), cases which addressed standing under RICO rather than ERISA, but had facts similar to the case at hand. These cases will be examined in more detail in the following section on Plaintiffs' RICO claims.

**11.** Addressing the class action nature of the suit, the court also observed that the proof

required to show that claims were denied based on the overly restrictive review criterià would be too speculative to decide the issues in any workable way. *Id.* at 406.

**12.** Moreover, these Plaintiffs will never have a claim denied under the policies in question, as they no longer have such policies. See FAC ¶ 11; Mot. at 9.

seek as injunctive relief. "Absent a specific recitation of ... injunctive relief sought, the Court and defendants are entirely unable to determine whether the complaint alleges sufficient facts to show that plaintiff is entitled to the requested relief." *Conkey v. Reno*, 885 F.Supp. 1389, 1392 (D.Nev.1995). Moreover, Plaintiffs no longer participate in Defendants' disability plan. FAC ¶ 11; Mot. at 9. To the extent the named Plaintiffs are seeking to enjoin Defendants from making future misrepresentations, they would obtain no relief from such an injunction and would thus have no standing to pursue it. *See Selby v. Principal Mutual Life Ins. Co.*, 197 F.R.D. 48, 64 (S.D.N.Y.2000).

Plaintiffs attempt to distinguish *Horvath* and *Doe* by making a tortured diversion through two RICO cases, *Maio*, 221 F.3d 472, and *In re Managed Care Litigation*, 150 F.Supp.2d 1330 (S.D.Fla.2001).[13] *Maio* and *Managed Care* will be discussed more fully under the RICO section of this Order, but Plaintiffs' assertion that the *Managed Care* holding on RICO supports their ERISA position is misplaced. The court in *Managed Care* considered an ERISA theory of recovery based on the allegation that the plaintiffs received coverage of lesser value than the coverage they should have received under the terms of the health plan. *Managed Care*, 150 F.Supp.2d at 1357. The plaintiffs were seeking "benefits due" under the plan, but failed to explain how these benefits could be conferred. The court dismissed this claim as "uncharted legal territory." *Id.*[14]

In a subsequent amendment to their complaint, the plaintiffs reconstructed this claim as one for unjust enrichment under common law, but the court dismissed the claim as likely preempted by ERISA. *In re Managed Care Litigation*, 185 F.Supp.2d at 1336.

ii. *Fraudulent Inducement*

■ The sole support Plaintiffs may find in *Managed Care* for their ERISA claim is that court's differentiation of a breach of contract claim from a fraudulent inducement claim. This distinction, however, is based on the court's RICO analysis, not its ERISA analysis.

Plaintiffs assert that Defendants have misconstrued their claim as a breach of contract case when they are actually asserting a fraudulent inducement theory. Opp. at 8. They assert that they are seeking "rescission of insurance contracts that were induced by the insurers' fraud." *Id.*[15] To reinforce this position, they argue that they are not claiming "that there has been a diminution in value of their policies." *Id.* Plaintiffs' own statements belie this position, however. For example, Plaintiffs allege: "Defendants ... did not take *all* of the risk of injury;" "Plaintiffs gave money for a complete shifting of the covered risk, not a shifting of *some* risk;" "rather than doing business so as to provide the *full* value of the coverage when a disability event occurs, ... Defendants save money and increase profits through a scheme that directs subsidiaries and co-defendants to breach the contracts." *Id.* at 8, 12 (emphases added); Compl. ¶ 25

**13.** Plaintiffs also rely on a state court insurance case, *Boswell v. Liberty Nat'l Life Ins.*, 643 So.2d 580 (Ala.1994), which is inapplicable here as the case does not address ERISA or Article III standing.

**14.** The follow-up to this case indicates that at least some plaintiffs, like Plaintiffs in the instant case, were no longer participants in the health plans under consideration. *In re Man-aged Care Litigation*, 185 F.Supp.2d 1310, 1315 (S.D.Fla.2002).

**15.** As support for this theory, Plaintiffs assert that this court, in the prior Order Denying Plaintiffs' Motion to Remand, held that Plaintiffs have a remedy for rescission. In fact, this court held that ERISA may provide a rescission remedy, not that Plaintiffs necessarily have that remedy.

(emphasis added). Thus, although Plaintiffs have attempted to cast their claim as one for fraudulent inducement, even they have difficulty characterizing the facts as anything but a contract issue: they claim to be receiving less than what they paid for and thus assert Defendants must have breached the contract.[16]

Plaintiffs also rely heavily on *Camp v. Pacific Financial Group*, 956 F.Supp. 1541 (C.D.Cal.1997), to support the proposition that their fraudulent inducement theory provides a remedy under ERISA. The case is inapposite. There, the plaintiffs were seeking recovery of plan assets that had been looted by the plan administrator. *Id.* at 1543. The *Camp* court's ERISA analysis was based strictly on preemption of a state law wrongful inducement claim where the damages related to pecuniary loss caused by fraud in the administration of an ERISA plan. *Id.* at 1550. The plaintiffs had ERISA remedies under § 1132 to recover damages due to the alleged looting of the plan by the plan fiduciary. *Id.* at 1548. Plaintiffs in the instant case do not allege that their fiduciary has looted their plan. Nor do they seek to reimburse the plan as in *Camp*.[17]

Even if Plaintiffs' fraudulent inducement theory of injury were conceded, their claims are not ripe as the *Doe* court recognized in dicta: the promisee "does not suffer an injury necessary to trigger a fraud claim based on fraudulent inducement unless and until the promisor actually breaches the contract by failing to perform." *Doe*, 173 F.Supp.2d at 407. The conclusion leading from the analyses of *Horvath* and *Doe* would be no different under contract or tort: Plaintiffs have not suffered an injury until they have sought and been denied benefits.

In short, whether Plaintiffs have alleged fraudulent inducement or a breach of contract, they have not established injury under Article III. Plaintiffs have never made a claim for benefits that Defendants have failed to honor. Thus, Defendants have not failed to perform, and there can be no breach of contract. Nor have Plaintiffs suffered injury that could support a claim of fraud. As Plaintiffs never made claims which were improperly denied, they have not alleged an injury which would give them standing under ERISA. In addition, they have not specified the injunctive relief sought, nor do the currently named Plaintiffs have standing to pursue an injunction, as they no longer have policies with Defendants. Accordingly, Defendants' Motion to Dismiss the ERISA claim is granted.[18]

## B. *RICO*

### 1. *Applicable Standard*[19]

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a com-

---

**16.** Because Plaintiffs acknowledge that their policies were of some value, any relief would necessarily involve a determination of how much Plaintiffs' policies were worth—in other words, a calculation of the alleged diminution in their value. As others to address this issue have noted, courts are ill-equipped to make such determinations, and there is no evidence Congress intended them to do so. *See Horvath*, 333 F.3d at 457; *Doe*, 173 F.Supp.2d at 405.

**17.** The *Camp* plaintiffs were apparently seeking damages on behalf of the plan rather than on behalf of beneficiaries of a plan, which

would fall under § 1132(a)(2). *Camp*, 956 F.Supp. at 1548. That section allows damages as a remedy, whereas § 1132(a)(3), under which Plaintiffs seek to state a claim, allows only equitable relief.

**18.** Because Plaintiffs have failed to allege an injury under Article III and thus have no standing to pursue their claim, the court need not address other remedies under ERISA.

**19.** Neither party distinguished a Rule 12(b)(1) from a Rule 12(b)(6) motion for the purposes of standing. The Third Circuit has analyzed issues of RICO standing under 12(b)(6).

plaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1990). The court must deny the motion unless it appears that the plaintiff can prove no set of facts that would entitle it to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When evaluating a Rule 12(b)(6) motion, the court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Barron v. Reich*, 13 F.3d 1370, 1374 (9th Cir.1994). However, the court is not bound to assume the truth of legal conclusions merely because they are stated in the form of factual allegations. *See Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). Dismissal is proper if a complaint is vague, conclusory, or fails to set forth any material facts in support of the allegation. *See North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 583 (9th Cir.1983).

Plaintiff bears the burden of pleading facts sufficient to state a claim; courts will not supply essential elements of a claim that were not initially pled. *See Richards v. Harper*, 864 F.2d 85, 88 (9th Cir.1988). Only allegations in the complaint may be considered in a Rule 12(b)(6) motion. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 1002 (9th Cir.1999); *Rubinstein v. Collins*, 20 F.3d 160, 169 n. 38 (5th Cir.1994) (refusing to look beyond four corners of complaint when reviewing motion to dismiss).

■ If the court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. Leave to amend is denied only if it is clear that amendment would be futile, and "that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir.1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir.1980)).

### 2. Application

In their second cause of action, Plaintiffs allege that Defendants' use of the mails and wire communications in connection with the fraudulent misrepresentation of disability benefits was part of a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). FAC ¶ 59. Defendants assert that Plaintiffs lack standing to sue under RICO because they have not pled facts to support that they have suffered a legally cognizable injury to business or property. Mot. at 14.

■ In order to seek a civil remedy for a RICO violation, a "person [must be] injured in his business or property by reason of a violation of section 1962" of the RICO statute. 18 U.S.C. § 1964(c). This injury must be "a concrete financial loss, and not mere injury to a valuable intangible property interest." *Oscar v. University Students Co–operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) (en banc) (citation omitted) (internal quotation marks omitted). *See also Berg v. First State Ins. Co.*, 915 F.2d 460, 463–464 (9th Cir.1990) (cancellation of insurance policies did not result in injury to plaintiff insureds' "business or property" under RICO). "As a result, RICO plaintiffs face a more stringent burden than ERISA plaintiffs, who are free to claim a wider range of actionable injuries." *Doe*, 173 F.Supp.2d at 403 n. 9. The injury Plaintiffs allege for this claim is the payment of premiums for disability policies when Defendants allegedly falsely repre-

*Maio*, 221 F.3d at 482 n. 7. The Ninth Circuit has implicitly made the same choice. *See Oscar v. University Students Co-operative Ass'n*, 965 F.2d 783, 785 (9th Cir.1992) (analyzing a RICO diminished value claim under 12(b)(6)).

sented the level of coverage. FAC ¶¶ 29, 56.

The Third Circuit addressed the requirement that a plaintiff asserting a claim under RICO allege a "tangible economic harm." *Maio*, 221 F.3d at 488. In *Maio*, a class action was instituted on behalf of both present and former members of a health maintenance organization ("HMO"). The plaintiffs claimed that they had paid for high quality health care, but that the defendants' restrictive internal policies prevented delivery of that care. *Maio*, 221 F.3d at 475. They also claimed the defendants had misrepresented the incentives that physicians would receive based on the quality of care provided. *Id.* These misrepresentations were distributed to every prospective enrollee. *Id.*

The *Maio* plaintiffs enumerated many examples of the defendants' policies that would lead to a decreased quality of care. *Id.* at 477–478. For example, the plaintiffs alleged that physicians were provided with financial "incentives and disincentives which seek to restrict HMO members' hospitalization, specialist and emergency room utilization." *Id.* at 477. The plaintiffs did not allege, however, that they had suffered any injury due to denial or reduction of benefits. *Id.* at 480. In fact, plaintiffs specifically disclaimed "any injury due to the denial of benefits, reduction of benefits, [or] inferior care." *Id.* The court characterized the plaintiffs' argument as this: they had suffered an injury cognizable under RICO because "they paid too much in their premium dollars for the health insurance they received from [defendants]." *Id.* at 484.

The *Maio* court rejected plaintiffs' theory that the financial losses they sustained by enrollment in the defendants' inferior plan constituted a tangible economic harm under RICO. *Id.* at 487–488. The court looked at two types of economic harm: the diminished economic value of the policy itself, and the overpayment in premiums for an inferior health care product. *Id.* at 488. As to the first type of economic harm, the court based its reasoning on a breach of contract theory. The plaintiffs claimed a diminution in the value of their property, *viz.*, their insurance policy. *Id.* at 488. The nature of the plaintiffs' property interest was their contractual right to receive benefits under their policy. *Id.* at 489. When property interests are in the nature of a contract right, economic harm arises only with financial losses caused by the defendants' breach. *Id.* at 490. If the contract had not been breached by denial of adequate benefits to the plaintiffs, the court reasoned, the plaintiffs had not pled an injury to their property rights. *Id.*[20]

As to the second type of economic harm, overpayment of premiums for inferior health care when quality health care was promised, the court observed that the harm could not exist without some proof of inferior treatment under the HMO's plan. *Id.* at 493. Without some allegation of diminished benefits, the plaintiffs could not establish that they received anything less than what they had bargained for, or that they paid too much for what they received. *Id.* at 494. Thus, under either theory of economic harm, where the plaintiffs could not assert that they "were denied medically necessary benefits, received inadequate, inferior or delayed medical treatment, or ... suffered personal injuries as a result of [defendants'] systemic policies and practices," they had no factual basis to assert

---

**20.** In order to address the breach of contract issue, the plaintiffs further argued that the HMO breached the contract when it failed to implement policies targeted at providing quality health care. The court found the allega-

tion insufficient to establish the requisite link between the implementation of the HMO's policies and a failure to perform a specific promise of providing quality health care to its members. *Id.* at 492.

that they were injured in their property. Thus, they had no cause of action under RICO. *Id.* at 488.

■ Ninth Circuit law supports the conclusion that RICO does not provide a remedy for allegedly inferior quality of insurance benefits, where no benefits were ever sought.[21] In *Oscar,* the court held that the plaintiffs had a "purely speculative" loss when they could not allege that they had ever tried to get the benefit of which they claimed to be deprived. *Oscar,* 965 F.2d at 787. The plaintiff renters alleged that activities of residents at a nearby student co-op violated RICO, their alleged loss being a diminution in their rental interest. *Id.* at 784–785. The court found that the only interest of value the plaintiffs had was their ability to sublet their apartments. *Id.* at 787. As the plaintiffs had not tried to sublet, any loss was purely speculative. *Id.* Thus, the plaintiffs had not pled an injury cognizable under RICO. *Id.* at 788. Applying this reasoning to the instant case, Plaintiffs here have not sought benefits from Defendants, their loss is tied to a speculative denial of benefits, and thus they have not suffered an injury under RICO.

Plaintiffs prefer the approach taken in *Managed Care* by a district court in Florida. In *Managed Care,* the plaintiffs alleged that they were "fraudulently induced to purchase insurance coverage with explicit rights to coverage which the Defendants never intended to honor, and therefore suffered a tortious injury at the time they enrolled in the Defendants' plans." 150 F.Supp.2d at 1339. The plaintiffs there alleged that policies similar to those

described in *Maio,* notably, undisclosed physician incentives, led to a lower value of their health care policy. *Id.* at 1338. Finding their rationale in the tort concept of fraudulent inducement, the *Managed Care* court reasoned that money is property, and that a diminution in property through a payment wrongfully induced causes an injury. *Id.* This tortious injury thus sufficed for the court to find the plaintiffs had alleged facts sufficient to maintain standing under RICO. *Id.* at 1339.[22]

This court finds the reasoning in *Managed Care* unpersuasive, at least as applied to the instant case. The court in *Managed Care* recognized that evidence would be required to support any allegations of injury. *Id.* For example, the court suggested that the "overpayment" of premiums could be determined by reference to a market for the services contracted for. *Id.* The court did not explain how such "services" would be determined, if not by the type of services actually applied for and received by the plaintiffs. As it is undisputed that Plaintiffs in the instant suit have never applied for benefits under the plan, it would be impossible to value the services received or denied.

Moreover, the fact that Plaintiffs paid premiums does not state a claim for deprivation of property. Insurance is normally purchased with premiums. By definition, an insurance policy promises certain benefits in the event of specified contingencies. In the absence of such contingency and a claim for such benefits, there can be no showing that the benefits given were less than those purchased with the premiums. Absent such a showing, there can be no injury.[23]

---

**21.** *See In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.,* 155 F.Supp.2d 1069, 1091–1094 (S.D.Ind.2001), *reconsideration granted in part,* 205 F.R.D. 503 (S.D.Ind.2001), *rev'd in part on other grounds,* 288 F.3d 1012 (7th Cir.2002) (discussing lack of support for a diminished value theory in other circuit and district courts).

**22.** The same court, however, found that an ERISA claim based on the same facts resembles a breach of contract claim. *Id.* at 1357.

**23.** Moreover, as the Ninth Circuit has made clear, neither the protection insurance policies afford against potential future loss nor the peace of mind flowing from such protec-

The cases relied on by Plaintiffs to demonstrate that mere payment of premiums constitutes an injury under RICO are inapposite, as they involved plaintiffs who had brought suit after being provided a service or product that was demonstrably less than had been bargained for. *Lexington Ins. Co. v. Forrest*, 263 F.Supp.2d 986, 990–91 (E.D.Pa.2003) (plaintiff lost millions in fees and costs occasioned by defendants' Ponzi scheme); *Fleischhauer v. Feltner*, 879 F.2d 1290, 1295 (6th Cir.1989) (plaintiffs received non-marketable films after contracting with defendants in a film distribution program); *Rosario v. Livaditis*, 963 F.2d 1013, 1015 (7th Cir.1992) (plaintiff students received substandard education from defendant beauty colleges).[24] In the instant case, Plaintiffs have not made a claim for benefits for which they bargained and thus cannot assert that they received anything less. *See Maio*, 221 F.3d at 480 ("The [insurance plan] simply cannot be 'worth less' unless something plaintiffs were promised was denied them.")

In this action, Plaintiffs' characterization of their Complaint as fraudulent inducement rather than a breach of contract does not save them from the requirement to allege an injury cognizable under RICO. This they have not done. They never sought benefits, and thus cannot allege that benefits to which they were entitled were not conferred. Their premium payments alone do not constitute injury if they cannot demonstrate that Defendants' ac-

tions in administration of the plan resulted in their receiving fewer benefits than those bargained for. Accordingly, Defendants' Motion to Dismiss the RICO claim is granted.[25]

## IV. CONCLUSION

Both Plaintiffs' ERISA and RICO claims are grounded in the assumption that *had* Plaintiffs made claims on their policies when they had such policies, Defendants *would not* have provided the benefits due. As Plaintiffs made no such claims, any harm they might have suffered is purely speculative. Nor does the fact that they paid premiums while the policies were in effect constitute a cognizable injury, as without a deprivation of benefits there can be no showing of premiums wrongfully taken. Because no amount of artful pleading could avoid the speculative nature of Plaintiffs' claims, the Defendants' Motion to Dismiss the FAC with prejudice is GRANTED. *See Maio*, 221 F.3d at 500–01, n. 19.

IT IS SO ORDERED.

---

tion constitutes a property interest cognizable under RICO. *Berg*, 915 F.2d at 464.

**24.** Contrary to Plaintiffs' representations, the Ninth Circuit in *Steele v. Hospital Corp. of America*, 36 F.3d 69, 70–71 (9th Cir.1994), did not recognize an injury in fact based on the defendants' allegedly improper billing procedures. In fact, the court rejected the plaintiffs' claims that improper billing procedures had caused an injury cognizable under RICO, where the plaintiffs could not show the procedures forced them to incur out-of-pocket

loss for medical services. *Steele*, 36 F.3d at 71 ("[Plaintiff] has not described a concrete financial loss, but rather a speculative injury contingent on actually seeking medical care for himself. We have held that speculative injuries do not serve to confer standing under RICO, unless they become concrete and actual.") (citations omitted).

**25.** Because Plaintiffs have failed to allege an injury cognizable under RICO, the court need not address the specific claims under RICO.